PERRI, Appellee,

v.

PERRI, Appellant.

[Cite as *Perri v. Perri* (1992), 79 Ohio App.3d 845.]

Court of Appeals of Ohio,
Montgomery County.

No. 12956.

Decided May 6, 1992.

*Don A. Little*, for appellee.

*James F. Brandabur*, for appellant.

WOLFF, Judge.

Linda C. Perri appeals from a judgment of the Montgomery County Court of Common Pleas, Division of Domestic Relations, which terminated the obligation of her former husband, Joseph A. Perri, to pay sustenance alimony. Mrs. Perri's single assignment of error is as follows:

"The trial court erred when it found that defendant-appellant cohabitated with a member of the opposite sex for purposes of termination of her entitlement to alimony."

The final judgment and decree of divorce was entered January 27, 1989. Paragraph 12 of the final judgment and decree of divorce, which incorporated

the parties' "agreement as to a division of their property, alimony and payment of debts," provided as follows:

"Alimony shall be paid to Defendant by Plaintiff for a period of forty-two (42) months or until any of the following occurrences which shall automatically terminate the alimony obligation:

"(A) The death of either party shall terminate alimony;

"(B) The remarriage of Defendant shall terminate alimony; and

"(C) The cohabitation of Defendant with a member of the opposite sex who is not a blood relative shall terminate alimony[.]"

On May 25, 1990, Mr. Perri moved to terminate sustenance alimony on account of Mrs. Perri's alleged cohabitation with a man. The motion was heard by a referee on June 27 and July 31, 1990. (Only a transcript of the July 31, 1990 portion of the hearing is available to this court as part of the appellate record.) On August 15, 1990, the trial court entered the report and recommendation of the referee and a permanent order terminating sustenance alimony effective June 27, 1990. Mrs. Perri filed a notice of appeal August 28, 1990 (case No. 12422). On February 25, 1991, this court dismissed case No. 12422 for want of an appealable order because the trial court had not ruled on Mrs. Perri's timely objections to the referee's report and recommendation. The trial court thereafter ruled on the objections and entered its decision and judgment July 2, 1991, from which the present appeal is taken.

The decision and judgment of the trial court provides in pertinent part as follows:

"The referee's report recommended that alimony payable by plaintiff to defendant be terminated as of June 27, 1990 based upon a finding that the defendant had cohabited with a member of the opposite sex who was not a blood relative, thus triggering Paragraph 12(C) of the parties' decree.

"Defendant objects that there is insufficient evidence to justify this termination. We disagree and, on the contrary, find that there is ample evidence to justify the termination.

"A brief review of the relevant facts as found by the referee and contained in the transcript of the proceedings held July 31, 1990 is necessary. Mr. John Santy had received mail at defendant's residence even up to the date of the hearing. He used defendant's telephone and received calls at the defendant's residence. He has used defendant's address as his own for mail purposes. He has kept clothing at the defendant's residence even when he wasn't present. Mr. Santy lived at defendant's residence from the beginning of 1990 until May, 1990, a total of approximately four and a half months. Further, in 1989, Mr. Santy stayed with the defendant nine out of 12 months. One of the

most important facts as found by the referee is that the defendant partially supported Mr. Santy at this time.

"Defendant cites *Taylor v. Taylor* (Ct.App. Hamilton Co. 1983), 11 Ohio App.3d 279 [11 OBR 459, 465 N.E.2d 476], as support for her position that alimony should not be terminated because she was not cohabiting with Mr. Santy. The *Taylor* court stated:

" ' * * * [T]he purpose sought to be achieved by the use of such language [*i.e.*, the cohabitation wording in a divorce decree] is obvious: To prevent a person from receiving support from two sources, each of whom is obligated or voluntarily undertakes the duty of total support. * * *

" ' * * * In this case, the germane issue before the trial court was whether the gentleman in question, by voluntarily taking certain aspects of a continuing relationship with the plaintiff, thereby assumed obligations equivalent to those arising from a ceremonial marriage.' *Taylor* at 280 [11 OBR at 460–461, 465 N.E.2d at 477].

"The court agrees with this holding. Further, we find the opposite to be true. We hold that another purpose sought to be achieved by a cohabitation clause in the divorce decree is to prevent a person who is receiving support from using those funds to support another individual, namely 'a member of the opposite sex who is not a blood relative.' Therefore, simply because the referee found that Mr. Santy was not providing financial support to the defendant, this is not dispositive of the issue of whether the defendant and Mr. Santy were cohabiting. Equally as important to a finding of cohabitation is whether the party receiving spousal support is financially supporting another unrelated individual of the opposite sex. This is the exact situation presented in the case sub judice.

"We further find after a review of all evidence that there is a regularity of functioning as would a husband and wife, either sexually or otherwise. *Fuller v. Fuller* (Ct.App. Franklin Co. 1983), 10 Ohio App.3d 253, 254 [10 OBR 366, 461 N.E.2d 1348].

"Defendant cites *Savino v. Savino* (April 26, 1985), Montgomery Co. App. No. 9164, (unreported) [1985 WL 7909], as further support for her position. In applying *Savino* to the case sub judice, we find that Mr. Santy and defendant's stays together were more than sporadic and that this couple[d] with the other facts as found by the referee and supported by the transcript, supports the referee's finding that defendant and Mr. Santy were cohabiting within the meaning of plaintiff's and defendant's divorce decree."

In addition to the facts outlined in the trial court's decision and judgment, Mrs. Perri testified July 31, 1990, that she met Peter Santy, also referred to as

John Santy, in January 1989, that she permitted Santy to stay at her residence, that she paid all the bills, that she worked as a receptionist/secretary until April 30, 1990 and would receive unemployment benefits for "a couple more months" (from July 31, 1990), that Santy lived at her residence from January through mid-May 1990, that she and Santy had sexual intercourse approximately two times per month, that she and Santy did not hold themselves out as husband and wife, and that she was still dependent upon alimony from Mr. Perri for her sustenance. Santy testified that neither he nor Mrs. Perri had any intention of marrying. Both Santy and Mrs. Perri described their relationship as one of friendship. It appears that as of the time of the motion hearing, Santy no longer resided at Mrs. Perri's residence. Although we do not have the benefit of the transcript of the hearing on June 27, 1990, the additional facts which we have recounted would appear to be consistent with the findings made by the trial court, through its referee, and the representations of Mr. Perri in his appellate brief.

The gist of Mrs. Perri's assignment of error is that the trial court erroneously found cohabitation, notwithstanding the fact that the evidence established that at those times Santy resided with Mrs. Perri he had no income, contributed nothing to the support of Mrs. Perri's household, and had assumed no obligation to provide any such support.

The evidence, as disclosed by the report and recommendation of the referee, the decision and judgment of the trial court, and the transcript of the second evidentiary hearing, supports these factual contentions. Based on the evidence and the law, we are constrained to reverse the judgment, which terminated sustenance alimony, and to remand this matter for further proceedings.

In *Taylor v. Taylor* (1983), 11 Ohio App.3d 279, 11 OBR 459, 465 N.E.2d 476, the Court of Appeals for Hamilton County addressed a divorce decree that added " 'cohabitation' to the more customary events of death and remarriage as events triggering the acceleration of, or release from, an obligation provided for in the divorce decree":

" * * * This language appears to have been developed by the domestic relations court in recent years to forestall a perceived tendency on the part of a former spouse to avoid the consequences of remarriage by instead engaging in a meretricious relationship with another. Given such conditions, a divorced wife, for instance, whose periodic alimony payments would cease on remarriage, would instead choose to live together with her paramour without benefit of clergy, and continue to claim her alimony. In order to prevent this state of affairs, the concept of 'cohabitation' was added to that of 'remarriage.'

"While judicial interpretation of the word in the instant context appears to be a matter of first impression in this state, the purpose sought to be achieved by the use of such language is obvious: to prevent a person from receiving support from two sources, each of whom is obligated or voluntarily undertakes the duty of total support. The public policy behind this purpose is not here questioned, nor in our opinion could it be. If the obligation of divorced husband A to support divorced wife B is terminated by the remarriage of B to C, it is because the law recognizes the role of marriage in formalizing the support obligations of B and C in which A no longer plays a role. If instead of marrying C, B chooses to 'cohabit' with him, the law, as reflected in the language of the decree, will assume the same consequences to follow as in the case of a ceremonial marriage, and for the same reason.

"Indeed, this could be the only legitimate purpose of the language in question. The domestic relations court is a court of law, just as is this court; it is not an ecclesiastical tribunal to enforce moral standards uncodified by statute. Sexual relationships, licit or otherwise, are not its concern, except as they may bear on an issue germane to the court's jurisdiction. In this case, the germane issue before the trial court was whether the gentleman in question, by voluntarily undertaking certain aspects of a continuing relationship with the plaintiff, thereby assumed obligations equivalent to those arising from a ceremonial marriage. A sexual relationship, since it customarily follows any such undertaking, would be strong evidence of his having done so, but neither it nor its absence would necessarily be *dispositive* of the issue. As marriage partners may mutually consent to a cessation of a sexual relationship, or as age or illness may render its practice impossible, all without disturbing the obligations of the contract, so too may it be the case with cohabitation. Sexual intercourse, in short, is not the *sine qua non* of the 'cohabitation' intended by the instant decree, as the referee found and the trial court approved. It may be a persuasive indicium of cohabitation, but it is not everything." (Emphasis *sic* and footnotes omitted.) *Id.* at 280–281, 11 OBR at 460–461, 465 N.E.2d at 477–478.

In this case, the trial court cited *Taylor*. The trial court did not take issue with *Taylor*, but reasoned that just as a former husband should not be required to pay sustenance alimony where the former wife is now being supported by a paramour, so should a former husband not be required to pay sustenance alimony where the former wife is utilizing the alimony to support a paramour.

There can be no doubt that Santy was indirectly supported, at least in part, by the alimony payments made by Mr. Perri to his former wife. She testified that she was dependent upon his alimony payments for her sustenance. Thus,

Santy resided for a significant period of time in a residence of which the expenses were paid for, at least in part, by the sustenance alimony payments.

Nevertheless, we conclude that the remedy adopted by the trial court was too drastic for the possible inequity to be redressed. In this case, the evidence fails to establish that Santy "voluntarily under(took) the duty of total support" or "assumed obligations equivalent to those arising from a ceremonial marriage." *Id.* See, also, R.C. 3103.03(A). Indeed, just the opposite appears to be the case. Given the evidence, we believe that a less drastic remedy is available and appropriate to address the possible inequity of Santy's having benefited from alimony payments made to Mrs. Perri.

In *Stevens v. Stevens* (1986), 23 Ohio St.3d 115, at 121–122, 23 OBR 273, at 278–279, 492 N.E.2d 131, at 136, the court dealt with a provision in a divorce decree that provided for the automatic termination of sustenance alimony if the wife "were found to be living 'in a state of concubinage.'" As to this provision, the court stated as follows.

" * * * Whether this term was used in the sense of punishment for immoral behavior or otherwise, this court held in *Wolfe v. Wolfe, supra* [ (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413], at paragraph three of the syllabus, that '[p]ost divorce unchastity upon the part of the former wife is not grounds for automatically terminating the alimony award but may be considered in a subsequent modification proceeding insofar as it is relevant to the issues of continued need for such alimony and the amount.'"

In *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413, the trial court considered a divorce decree which provided for the termination of alimony only in the event of the remarriage or the death of the wife. One of the issues in *Wolfe* was whether the postdecree unchastity of the former wife was a basis for modification of the sustenance alimony award. The court stated at 420–421, 75 O.O.2d at 485–486, 350 N.E.2d at 427, as follows:

"We are of the view that such unchastity as disclosed in the record before us does not per se require, by reason of public policy, a full termination of an alimony award. It is, however, a circumstance that could and should be considered as to modification ·or termination. In *Garlinger v. Garlinger* (1975), 137 N.J.Super. 56, 347 A.2d 799, in a case similar to this, the court stated [at page 64, 347 A.2d], at page 803, after adopting a rule that post-divorce unchastity by the wife may be considered in a modification proceeding, the following:

"We have no doubt, however, that where a former wife chooses to cohabit with a paramour, whether in her abode or his, or otherwise consorts with him, the issue may well arise whether, in the circumstances, she has further need for the alimony. If it is shown that the wife is being supported in whole or in

part by the paramour, the former husband may come into court for a determination of whether the alimony should be terminated or reduced. Similarly, if the paramour resides in the wife's home without contributing anything toward the purchase of food or the payment of normal household bills, then there may be a reasonable inference that the wife's alimony is being used, at least in part, for the benefit of the paramour, in which case it could be argued with force that the amount thereof should be modified accordingly. In short, the inquiry is whether the former wife's illicit relationship with another man, apart from the misconduct *per se*, has produced a change of circumstances sufficient to entitle the former husband to relief."

■ Where, as here, the evidence fails to establish that the paramour has undertaken any obligation of support, much less an obligation of total support, *Taylor, supra*, we believe that the proper focus of the trial court's inquiry should be on whether Mrs. Perri's relationship with Santy " 'produced a change of circumstances sufficient to entitle Mr. Perri to relief.' " *Wolfe, supra*, quoting *Garlinger v. Garlinger*. In other words, the focus should be on whether an appreciable amount of the sustenance alimony paid by Mr. Perri directly benefited Santy. From the evidence, it would appear that Mrs. Perri's living expenses, other than for food, would have been the same regardless of whether Santy shared her residence with her. However, this is not to suggest that on remand the trial court is not at liberty to determine, if supported by the evidence, that the situation produced a change of circumstances sufficient to entitle Mr. Perri to relief. However, the relief would not be a termination of sustenance alimony, but a reduction of sustenance alimony to the extent that it directly benefited Santy. Mrs. Perri was not in need of that portion of the alimony, if any, that directly benefited Santy, such as the cost of the food for him for which she paid.

■ Although unnecessary to the disposition of this appeal, we hasten to observe that if cohabitation is established, *i.e.*, if it is established that the paramour has voluntarily undertaken a duty of total support, or has otherwise assumed obligations equivalent to those arising from a ceremonial marriage, *Taylor, supra*, then the obligation to pay sustenance alimony can be properly terminated even if the relationship between the sustenance alimony recipient and the paramour comes to an end prior to the end of the period within which the other former spouse is required to pay sustenance alimony under the terms of the divorce decree. In this regard, a relationship arising to the level of a ceremonial marriage should have the same effect upon the obligation to pay sustenance alimony as an actual ceremonial marriage by the recipient of the sustenance alimony. A ceremonial marriage by the sustenance alimony recipient will terminate the obligation of the former spouse to pay sustenance

alimony, regardless of whether the new spouse actually supports the alimony recipient, or regardless of whether the ceremonial marriage itself ends during the period that sustenance alimony would otherwise be payable under the decree. If "cohabitation," as defined in *Taylor,* occurs, that cohabitation likewise terminates the obligation to pay sustenance alimony, regardless of whether the paramour actually supports the sustenance alimony recipient, or whether the cohabitation ends during the period that sustenance alimony would otherwise be payable under the decree.

Mrs. Perri's assignment of error is sustained.

The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN, J., concurs.

WILSON, J., dissents.

WILSON, Judge, dissenting.

In my view, the direct and circumstantial evidence in this case was sufficient to support the finding of the trial court that the defendant engaged in "cohabitation" within the meaning of the decree and the agreement of the parties. I would affirm.