OPINION
Brenda Day appeals from a judgment of the Greene County Court of Common Pleas, Domestic Relations Division, terminating appellee Harold Day's obligation to pay spousal support. The trial court based its decision on a finding that Brenda was cohabiting with an unrelated adult male in a marriage-like state.[1]
Brenda advances two related assignments of error on appeal. First, she contends the trial court's cohabitation finding is not supported by competent, credible evidence. Second, she argues that the trial court abused its discretion in terminating her spousal support, as the record contains no competent, credible evidence of cohabitation.
The present appeal stems from the parties' divorce and Brenda's subsequent relationship with an individual named Norman Koup. Under the terms of the divorce decree, Harold was obligated to pay Brenda spousal support of $700 per month. This obligation was to continue for 15 years, subject to termination upon the death of either party, Brenda's remarriage, or her "cohabitation with an unrelated adult male in a marriage-like state[.]" On August 24, 2001, Harold moved to terminate spousal support on the basis of cohabitation. Following an evidentiary hearing, a magistrate found that Brenda and Koup had been cohabiting since September, 2000. As a result, the magistrate terminated Harold's spousal support obligation effective August 24, 2001. The trial court then overruled Brenda's timely objections and adopted the magistrate's decision. On appeal, Brenda argues that the trial court abused its discretion in terminating her spousal support award because the record lacks competent, credible evidence of cohabitation. Having reviewed the record and applicable law, we are constrained to agree.
Brenda essentially argues that the trial court's finding of cohabitation is against the manifest weight of the evidence. This court has recognized that "[c]ohabitation is a question of fact for the trier of facts, and if the trial court's decision is supported by some competent credible evidence going to the essential elements of the issue, it should not be reversed by the reviewing court as being against the manifest weight of the evidence." Dingey v. Dingey (Feb. 14, 1997), Champaign App. No. 96-CA-14. The leading case in this appellate district on the issue of cohabitation is Perri v. Perri (1992), 79 Ohio App.3d 845. Therein, we recognized that a primary purpose of a cohabitation provision is "`to prevent a person from receiving support from two sources, each of whom is obligated or voluntarily undertakes the duty of total support.'" Id. at 850, quoting Taylor v. Taylor (1983), 11 Ohio App.3d 279, 280. As a result, we reasoned that cohabitation is established, and a spousal support obligation is subject to termination, when a paramour voluntarily undertakes a duty of total support or otherwise assumes obligations equivalent to those arising from a ceremonial marriage. Id. at 851-852. Notably, we also recognized in Perri that just as a former husband should not be required to pay spousal support when his former wife is totally supported by a paramour, he likewise should not be obligated to pay full spousal support when his former wife uses some of the money to support her paramour rather than to provide for her own sustenance. Id.
 The evidence in Perri failed to establish that the paramour, John Santy, voluntarily had undertaken a duty of total support of the former wife or that he otherwise had assumed obligations equivalent to those arising from a ceremonial marriage. Id. at 851. Indeed, we expressly found that the opposite was true. The former wife, Linda Perri, was at least partially supporting Santy with spousal support obtained from her former husband, Joseph Perri. Id. Given that Linda Perri had not obtained support from Santy, we rejected the trial court's finding of cohabitation for purposes of terminating Joseph Perri's support obligation. Id. Nevertheless, we held that Joseph Perri was not without recourse. In particular, we reasoned that when "the evidence fails to establish that the paramour has undertaken any obligation of support, much less an obligation of total support," a trial court should consider whether the relationship between the spousal support obligee and the paramour resulted in a "change of circumstances" sufficient to entitle the spousal support obligor to some relief. Id. at 852. In other words, the focus should be on whether an appreciable amount of the spousal support paid by the obligor directly benefitted the paramour. Id. If so, the proper remedy is not the termination of spousal support, but a reduction in the amount of support to the extent that it directly benefitted the paramour. Id.; see also Daley v. Daley (Jan. 31, 1997), Miami App. No. 96-CA-14 (affirming trial court's finding of no cohabitation where paramour failed to provide financial support for obligee, but recognizing that former husband may be entitled to reduction of his spousal support obligation if former wife used some of the spousal support to provide for her paramour).
As Perri makes clear, to terminate his spousal support obligation on the basis of cohabitation, Harold needed to prove that Koup voluntarily had undertaken a duty of total support for Brenda or otherwise had assumed obligations equivalent to those arising from a ceremonial marriage. Perri, supra, at 851-852; see also Daley, supra ("In order to establish cohabitation, it was incumbent upon Timothy to prove that Eric Haas had voluntarily undertaken a duty of total support or had otherwise assumed obligations equivalent to those arising from a ceremonial marriage."). In their written decisions, however, neither the magistrate nor the trial court found that Koup had undertaken a duty of support for Brenda or that he had assumed any obligations equivalent to those arising from an official marriage.[2] To the contrary, the trial court expressly found that Brenda was supporting Koup by allowing him to use her home and utilities, and that Brenda had assumed an obligation associated with a ceremonial marriage.[3] Doc. #97 at 2. In light ofPerri, we conclude that the these limited findings by the trial courtmay have entitled Harold to a reduction in spousal support on the basis of changed circumstances. As noted above, where "the evidence fails to establish that the paramour has undertaken any obligation of support, much less an obligation of total support," Perri, supra at 852, a trial court should consider whether an appreciable amount of the spousal support paid by the obligor directly benefitted the paramour. Id. If the record supports such a finding, then the proper remedy is to reduce Harold's spousal support obligation accordingly. Id.
In the present case, the findings made by the magistrate and the trial court do not establish that Koup undertook any obligation to support Brenda or that he assumed any marriage-like obligations. As found by the magistrate: (1) Koup maintained his own apartment but actually stayed at Brenda's home; (2) Koup's children visited him at Brenda's home; (3) Brenda paid the bills at her home without assistance from Koup; and (4) Koup and Brenda maintained separate bank accounts, separate vehicle debts, and separate credit cards.[4] Some of this evidence at least arguably might establish that Brenda's spousal support is benefitting Koup. Unfortunately, however, neither the magistrate nor the trial court made any specific finding regarding the extent to which Brenda may have used her spousal support for the benefit of Koup.[5] As a result, we believe that this issue must be addressed by the trial court. Accordingly, we hereby reverse the judgment of the Greene County Court of Common Pleas, Domestic Relations Division, and remand the cause for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
GRADY, J., and YOUNG, J., concur.
[1] For purposes of clarity, we will refer to the parties as "Brenda" and "Harold."
[2] Even on appeal, Harold does not argue that Koup provided support for Brenda. Instead, he asserts only that Brenda has used her spousal support to provide for Koup. As explained above, in such a case the proper remedy is to consider a reduction in spousal support.
[3] In particular, the trial court found that Brenda had assumed "the role of stepmother that is associated with a ceremonial marriage by allowing [Koup's] parenting time with his children to take place" at her home. Doc. #97 at 2. This finding apparently is derived from Koup's testimony that his children once resided in Brenda's house when they came for a summer visit. (Trial Transcript at 41).
[4] The magistrate made two other factual findings, neither of which even arguably would support a finding of cohabitation sufficient to terminate an award of spousal support under Perri. First, the magistrate found that Koup took Brenda out to eat "on occasion" and paid the bill himself. Second, the magistrate appears to have found that Koup and Brenda were engaged. With respect to the former finding, we are not prepared to say that taking someone to dinner constitutes undertaking an obligation of support within the meaning of Perri. With respect to the latter finding, the fact that Koup and Brenda may have been engaged, without much more, does not demonstrate cohabitation. The act of engagement itself did not provide Brenda with any financial support. Nor did it require Koup to assume any particular marriage-like obligations. See, e.g., Harlow v. Harlow (June 29, 1994), Montgomery App. No. 14287 (finding no abuse of discretion in trial court's failure to terminate spousal support, despite fact that support recipient had a live-in fiancé who contributed $50 per month to household expenses).
[5] Parenthetically, we note that the magistrate provided a comprehensive summary of the trial testimony but made only a few actual findings of fact. For its part, the trial court adopted the magistrate's decision.