OPINION
{¶ 1} Defendant-appellant Mohammed Rihan appeals from a decision of the Greene County Court of Common Pleas, Domestic Relations Division, which ordered that Mohammed's spousal support obligation to his ex-wife, Katia Rihan, be reduced from $1,583.33 per month to $500.00 per month on August 5, 2005. Additionally, the trial court reduced Mohammed's child support obligation from $1,603.69 per month to $1,062.86 for all three of his children with Katia. For the following reasons, the judgment of the trial court will be affirmed.
 I {¶ 2} We set forth the history of the case in Rihan v.Rihan (January 28, 2005), Greene App. No. 2004-CA-46,2005-Ohio-309 (hereinafter "Rihan I"), and repeat it herein in pertinent part:
 {¶ 3} "Mohammed and Katia were married on September 14, 1994, in Amman, Jordan. Three children were born during the marriage. Katia filed her complaint for divorce on May 21, 2002. After extensive discovery and motion practice, the action proceeded to trial on August 5-7, 2003, and January 12-13, 2004. Based on the testimony and documentary evidence presented, the trial court filed its judgment entry and final decree of divorce with findings of fact and conclusions of law on April 28, 2004."
 {¶ 4} Pertinent to this appeal, we affirmed the decision of the trial court finding that the preponderance of the evidence supported the court's conclusion that Mohammed intentionally burned down the marital manse. However, we held that the record did not support the trial court's factual findings with respect to Mohammed's business income. Lastly, we agreed with Mohammed that the trial court adopted an excessive rate of $300.00 per hour when calculating Katia's attorney's fees. Thus, we remanded the case for further proceedings to properly determine Mohammed's income for the purposes of his child support and spousal obligations.
 {¶ 5} The instant appeal focuses on Mohammed's motion to reduce child support and his motion to terminate spousal support, filed respectively on August 23, 2004, and January 12, 2005. The trial court held a hearing on Mohammed's motion to reduce child support on December 9, 2004. On June 20, 2005, the trial court held a separate hearing on Mohammed's motion to terminate spousal support. The trial court issued a judgment entry on August 5, 2005, which specifically addressed the merits of Mohammed's motions. As previously stated, the trial court reduced Mohammed's child support obligation based on a change in circumstances that he was able to demonstrate at the December 9, 2005, hearing. Rather than terminate Mohammed's spousal support obligation, the trial court reduced said obligation in light of its finding that Katia was co-habiting with an unrelated adult male. It is from this judgment which Mohammed now appeals.
 {¶ 6} Mohammed asserts three assignments of error with respect to the trial court's Judgment Entry which modified his spousal support and child support obligation issued on August 5, 2005. In his first assignment, Mohammed contends that the trial court erred when it failed to terminate, rather than modify, the spousal support order since the judge specifically found that Katia was co-habiting with an unrelated adult male. In his second assignment, Mohammed argues that the trial court abused its discretion when it failed to terminate spousal support after evidence was offered that Katia had remarried, although the new "marriage" occurred as the result of a Muslim religious ceremony apparently performed without the benefit of a marriage license issued by the State of Ohio. Lastly, Mohammed contends that the trial court's findings with respect to his imputed income for the purposes of his child support obligation were against the manifest weight of the evidence.
 II {¶ 7} Mohammed's first assignment of error is as follows:
 {¶ 8} "THE TRIAL COURT ERRED AND ACTED CONTRARY TO LAW IN MERELY MODIFYING THE SPOUSAL SUPPORT ORDER, RATHER THAN TERMINATING THE SPOUSAL SUPPORT ORDER, AFTER EXPRESSLY FINDING IN ITS JUDGMENT ENTRY THAT PLAINTIFF-APPELLEE, KATIA RIHAN, WAS COHABITING WITH AN UNRELATED ADULT MALE."
 {¶ 9} In his first assignment, Mohammed contends that the trial court abused its discretion when it failed to terminate his spousal support obligation after finding that Katia was co-habiting with an unrelated adult male in contravention of the parties' divorce decree. In support of his contention, Mohammed relies on a specific provision in the divorce decree which states in pertinent part:
 {¶ 10} "The spousal support shall terminate upon the death of either party or the Plaintiff's remarriage or co-habitation with an unrelated adult male as defined under Ohio case and statutory law."
 {¶ 11} This Court has adopted the judicial definition of the term "cohabit" as set forth by the First District Court of Appeals in Taylor v. Taylor (1983), 11 Ohio App.3d 279,465 N.E.2d 476. Yacovone v. Yacovone (Sept. 11, 1998), Miami App. No. 97-CA-66. "Where the term `cohabitation' is used in a divorce decree in the sense of an event which will alter obligations created in the decree, the court must look to whether the parties have assumed obligations, including support, equivalent to those arising from a ceremonial marriage. Taylor, supra, ¶ one of syllabus."
 {¶ 12} The relevant authority in this matter is Perri v.Perri (1992), 79 Ohio App.3d 845, 608 N.E.2d 790, in which this Court held that with respect to a proposed reduction in or termination of spousal support, the trial court should focus on whether an appreciable amount of the spousal support paid by the obligor directly benefits the paramour. If so, the proper remedy is not the termination of spousal support but rather a reduction in the amount of support to the extent that it directly benefitted the paramour. Daley v. Daley (Jan. 31, 1997), Montgomery App. No. 96CA14.
 {¶ 13} With respect to its decision to modify, rather than terminate, Mohammed's spousal support obligation, the trial court stated the following:
 {¶ 14} "The Plaintiff [Katia] testified her companion lives with her fifty percent of the time and resides in New York the other fifty percent of the time. They have a child in common. The Plaintiff told the Court the companion supports their child by buying diapers and food but does not contribute to the Plaintiff's living expenses because she has not asked him to."
 {¶ 15} "The Plaintiff's companion is living in her home and does not contribute anything toward household expenses except for the minor needs of his child. He does not pay anything for the child's housing or anything toward the utilities. His income does not benefit the Plaintiff or the parties' children. The Court finds it is reasonable to conclude that a portion of the Defendant's (Mohammed's) spousal support payments are used for the companion's benefit. The Plaintiff and her companion have lived together for over a year and have undergone a religious ceremony. Since the Plaintiff still has a need for spousal support, termination of the award would be unjust and unusually harsh. After considering statutory and case law, the Court finds there is a basis for a fifty percent reduction in spousal support."
 {¶ 16} The trial court went on to further state the following:
 {¶ 17} "It is determined that an award of reasonable spousal support is appropriate and it is also determined that both parties have experienced a change in circumstances that warrant a modification of the spousal support. If the Plaintiff were not co-habiting[,] the Defendant would be ordered to pay spousal support to the Plaintiff in the amount of $1,000.00 per month. The Plaintiff is co-habiting; therefore, her spousal support will be reduced by 50% due to the co-habitation to $500.00 per month."
 {¶ 18} It is clear from the record that the trial court engaged in a proper analysis under Perri, supra, in order to determine the extent to which to reduce Mohammed's spousal support obligation in light of Katia's co-habitation with an unrelated adult male. Based on testimony from Katia with respect to her relationship with her companion, identified at the hearing only as "Omar," the trial court concluded that because he lived with Katia only fifty percent of the time and did not pay any bills, Mohammed was not entitled to termination of spousal support obligation. Rather, the trial court correctly determined that only a portion of Mohammed's spousal support payments are used for Omar's benefit. Thus, Mohammed was entitled to a fifty percent reduction in his spousal support payments.
 {¶ 19} Mohammed's first assignment of error is overruled.
 III {¶ 20} Mohammed's second assignment of error is as follows:
 {¶ 21} "THE TRIAL COURT ERRED AND ACTED CONTRARY TO LAW IN FAILING TO TERMINATE THE SPOUSAL SUPPORT ORDER BASED UPON PLAINTIFFA-PPELLEE, KATIA RIHAN'S, REMARRIAGE."
 {¶ 22} In his second assignment, Mohammed argues that the trial court erred when it refused to terminate Mohammed's spousal support obligation in light of Katia's admission that she had married another man in a Muslim religious ceremony. We disagree.
 {¶ 23} In the judgment entry issued August 5, 2005, the trial court stated in pertinent part:
 {¶ 24} "The Plaintiff testified that she and her companion participated in a religious marriage ceremony on March 15, 2004. They did not obtain a marriage license. On that date[,] the Plaintiff and Defendant were still legally married to each other. Further, Ohio has not recognized common law marriage since October 10, 1991."
 {¶ 25} The marriage of a man and woman may occur in this state only if the marriage is solemnized by a person described in section 3101.08 of the Revised Code and only if the marriage is otherwise in compliance with Chapter 3101 of the Revised Code. R.C. § 3105.12(B)(1). An ordained or licensed minister of any religious society or congregation within this State who is licensed to solemnize marriages, * * *, or any religious society in conformance with the rules of its church, may join together as husband and wife any persons who are not prohibited by law from being joined in marriage. R.C. § 3101.08.
 {¶ 26} "There are major conceptual differences between void and voidable marriages. A voidable marriage is valid when entered and remains valid until either party secures a lawful court order dissolving the marital relationship." Darling v. Darling
(1975), 44 Ohio App.2d 5, 7, 335 N.E.2d 708. Conversely, "a void marriage is invalid from its inception, and the parties thereto may simply separate without benefit of a court order of divorce or annulment." Id. The policy of the law is to sustain marriages "where they are not incestuous, polygamous, shocking to good morals, unalterably opposed to a well defined public policy, or prohibited." Mazzolini v. Mazzolini (1958),168 Ohio St. 357, 358, 155 N.E.2d 206. Thus, the courts in Ohio label a defective marriage voidable, rather than void, unless such a label is against policy considerations. Dodrill v. Dodrill
(April 28, 2004), Vinton App. Nos. 03CA578 03CA580,2004-Ohio-2225.
 {¶ 27} In Dodrill, supra, the officiating person did not possess all of the requisite licenses necessary to solemnize a marriage under Ohio law. However, the Fourth District Court of Appeals held that the marriage in question was voidable and not void where said marriage did not violate the public policy of the State of Ohio. The Dodrill court provided the following three examples where a marriage would be void as against public policy: 1) if the parties were uncle and niece (incest); 2) if the parties were of the same sex; and 3) if either party had another spouse at the time of the marriage. Since none of these examples were present in the Dodrill case, the marriage, while defective, was not rendered void.
 {¶ 28} In the instant case, Katia testified that she and Omar were married in a Muslim religious ceremony by a mullah. However, no marriage license was secured through the State of Ohio. More importantly, Katia's "marriage" to Omar occurred while she was still legally married to Mohammed. Thus, Katia's second marriage is void as against public policy under Ohio case and statutory law. Katia may be married to Omar according to Muslim law, but the State of Ohio does not recognize the marriage. Mohammed's argument that his spousal support obligation should have been terminated is, therefore, without merit, and the trial court did not abuse its discretion.
 {¶ 29} Mohammed's second assignment of error is overruled.
 IV {¶ 30} Mohammed's third and final assignment is as follows:
 {¶ 31} "THE TRIAL COURT'S FACTUAL FINDINGS AS TO THE INCOME TO BE IMPUTED UPON DEFENDANT-APPELLANT, MOHAMMED RIHAN, FOR CHILD SUPPORT PURPOSES WAS CONTRARY TO, AND OTHERWISE AGAINST, THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED."
 {¶ 32} In his third and final assignment, Mohammed contends that the trial court erred when it imputed income to him of over $63,000.00 a year for the purposes of his child support obligation. During the hearing held on December 9, 2004, Mohammed testified that he earned approximately $450.00 per week from his cell phone business as well as an additional $300.00 per month doing odd jobs at a used car dealership.
 {¶ 33} "A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Daley, Miami App. No. 96-CA-14, citing, C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279, 376 N.E.2d 578, ¶ 1 of syllabus.
 {¶ 34} After a thorough review of the record as well as the child support worksheets completed by the trial court, the trial court's finding is not against the manifest weight of the evidence. It is clear that the trial court had a reasonable basis upon which to find that Mohammed, as the sole owner and employee of his cell phone business, made approximately $27,000.00 annually as an employee of his cell phone business and working part-time for the used car dealer. Additionally, the trial court found that the gross receipts for his cell phone business totaled approximately $70,800.00. The trial court deducted $33,400.00 for business expenses, leaving approximately $35,000.00 after other taxes were deducted. The trial court imputed that additional $35,000.00 to Mohammed because he testified that he was the only employee at his business. Thus, the trial court found that Mohammed netted approximately $63,000.00 dollars a year, and utilized that amount on the child support worksheets in order to correctly determine his child support obligation.
 {¶ 35} There were also various admissions that Mohammed made which the trial court noted, such as the fact that Mohammed testified that he was not paying rent on his business space. Thus, based on Mohammed's business financial records as well as his own testimony, it was not against the manifest weight of the evidence for the trial court to impute the above amounts to Mohammed in determining his annual income for child support purposes.
 {¶ 36} Mohammed's third and final assignment of error is overruled.
 V {¶ 37} All of Mohammed's assignments of error having been overruled, the judgment of the trial court is affirmed.
Grady, P.J. and Brogan, J., concur.