SPRING HILL NURSERIES CO., INC., APPELLEE, *v.* LINDLEY, TAX COMMR., APPELLANT.

[Cite as Spring Hill Nurseries Co. *v.* Lindley (1983), 5 Ohio St. 3d 54.]

(No. 82-1287—Decided May 18, 1983.)

*Smith & Schnacke Co., L.P.A., Mr. Stephen M. Goodson* and *Mrs. Maryann B. Gall,* for appellee.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Mark A. Engel,* for appellant.

*Per Curiam.*

## I

Section 371 of the Bankruptcy Act (Section 771, Title 11, U.S. Code), provides: "The confirmation of an arrangement shall *discharge* a debtor from all his unsecured debts and liabilities provided for by the arrangement, except as provided in the arrangement or the order confirming the arrangement, but *excluding such debts as, under section 17 of this Act, are not dischargeable.*" (Emphasis added.) Section 17a of that Act (Section 35, Title 11, U.S. Code) provides, in part: "A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, *except* such as (1) are *taxes which became legally due and owing by the bankrupt* * * * *to any State* * * * *within three years preceding bankruptcy* * * *.*" (Emphasis added.) Although the language in question, "legally due and owing," appears in a federal statute, state law gives that language meaning. See *In re Kopf* (D.N.Y. 1969), 299 F. Supp. 182, 184.

R.C. 5739.02(A) provides that sales tax is "* * * collectible when the sale is made, regardless of the time when the price is paid or delivered." A sale occurs when one party becomes obligated to render a service or to transfer title to or possession of tangible personal property, and the other party is obligated to pay a price. R.C. 5739.01(B) and (O). R.C. 5739.03 provides that the consumer is to pay the tax to the vendor, who holds the tax as a trustee for the state, either at the time the price is paid if paid in currency at or prior to delivery or, if the price is otherwise paid, by charging the amount of tax to the consumer's account at the time of the sale.

Regarding use taxes, R.C. 5741.02(B), at the time pertinent herein, required that "[e]ach consumer, storing, using or otherwise consuming in this state tangible personal property shall be liable for the tax." R.C. 5741.04 provides, similarly to R.C. 5739.03, that the consumer is to pay the vendor (who holds the tax as a trustee for the state) either at the time the price is paid if paid in currency at or prior to delivery or, if the price is otherwise paid by charging the amount of tax to the consumer's account at the time of the sale. As with sales taxes, consumers are subject to assessments for failure to pay use taxes. R.C. 5741.13.

R.C. 5739.03 and 5741.04 required Spring Hill to pay sales and use taxes, respectively, when the transaction occurred. It was at those times that the taxes became legally due and owing. The audit period, October 1, 1974, through June 30, 1977, is within the three years prior to July 1, 1977, the date on which Spring Hill filed its petition in bankruptcy. All the transactions upon which the taxes were assessed took place within three years preceding bankruptcy. Accordingly, the taxes for which Spring Hill was assessed were nondischargeable, pursuant to Section 17a(1) of the Bankruptcy Act.

We disagree, therefore, with the BTA's conclusion that these taxes became "due and owing" thirty days after January 23, 1979, the date of the commissioner's assessment. The BTA based this conclusion on R.C. 5739.13 which merely sets the thirty-day period as a deadline for filing a petition objecting to the assessment and making the amount of the assessment "due and *payable*" if no petition is filed. The mere coincidence of the language "due and owing" in the Bankruptcy Act and "due and payable" in the Revised Code is not dispositive. The transactions were the taxable event and established when the taxes were "due and owing."

Likewise, we reject appellee's contention that the legislative history suggests that the date of the assessment is the time at which the taxes became "due and owing." Appellee bases this argument on language in the Senate committee version of Section 17a of the Bankruptcy Act. See Sen. Rep. No. 999, 89th Cong., 2d Sess. (1966). This version of Section 17 recommended that the language "date of assessment" would be preferable to "legally due and owing." Congress did not adopt the "date of assessment" language, however, and clearly did not intend that date to be dispositive.

## II

The BTA also determined, and appellee contends in this court, that the commissioner's failure to file a timely proof of claim bars him from collecting the assessment because of Section 397 of the Bankruptcy Act (Section 797, Title 11, U.S. Code) which provides:

"Any provision in this chapter to the contrary notwithstanding, all taxes which may be found to be owing to the United States or any State from a debtor within one year from the date of the filing of a petition under this chapter, and have not been assessed prior to the date of the confirmation of an arrangement under this chapter, and all taxes which may become owing

to the United States or any State from a receiver or trustee of a debtor or from a debtor in possession, shall be assessed against, may be collected from, and shall be paid by the debtor or the corporation organized or made use of for effectuating an arrangement under this chapter * * *."

On its face, therefore, Section 397 creates an extra grace period—beyond the thirty days after confirmation for filing a proof of claim in Section 755, Title 11, U.S. Code—in which the state may assess taxes within the context of the bankruptcy proceeding. Nevertheless, the tax liability is *not* discharged or dischargeable under Section 17a(1). See *Newberg* v. *United States* (D.N.Y. 1960), 187 F. Supp. 158, affirmed (C.A. 2, 1961), 296 F. 2d 152, 153; *California State Bd. of Equalization* v. *Coast Radio Products* (C.A. 9, 1955), 228 F. 2d 520, 524. Section 397 does not change the fact that the debt remains without a discharge. *In re Western Trading Co.* (D. Nev. 1972), 340 F. Supp. 1130, 1134. The state may proceed, therefore, to collect the taxes due from Spring Hill's after-acquired property. See *California State Bd. of Equalization, supra,* at 525; *Salsbury Motors, Inc.* v. *United States* (C.A. 9, 1954), 210 F. 2d 171, 174, certiorari denied (1954), 347 U.S. 953.

This result may appear to be inequitable, because the commissioner's failure to file a proof of claim prevented satisfying this claim from the assets of the bankrupt's estate and may impede Spring Hill's "fresh start." Nevertheless, "* * * [Section] 17 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems—*e.g.,* those of financing government—override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy." *Bruning* v. *United States* (1964), 376 U.S. 358, 361 (footnote deleted). We must yield to the judgment of Congress and hold that Spring Hill remains liable for its use and sales taxes arising during the audit period.

Accordingly, we reverse the decision of the Board of Tax Appeals and remand the cause for consideration of those specifications of error which the board has not reviewed.

*Decision reversed and cause remanded.*

CELEBREZZE, C.J., W. BROWN, SWEENEY, LOCHER, C. BROWN and J. P. CELEBREZZE, JJ., concur.

HOLMES, J., dissents.