[Cite as *State v. Malloy*, 2012-Ohio-2664.]

IN THE COURT OF APPEALS OF CLARK COUNTY, OHIO

STATE OF OHIO                    :

    Plaintiff-Appellee           :    C.A. CASE NO. 11CA0021

vs.                              :    T.C. CASE NO. 09CR357

DARREN L. MALLOY                 :    (Criminal Appeal from
                                       Common Pleas Court)
    Defendant-Appellant          :

. . . . . . . . .

**O P I N I O N**

Rendered on the 15th day of June, 2012.

. . . . . . . . .

Andrew Wilson, Pros. Attorney; Lisa M. Fannin, Asst. Pros. Attorney, Atty. Reg. No. 0082337, 50 E. Columbia Street, 4th Floor, P.O. Box 1608, Springfield, OH 45501
    Attorneys for Plaintiff-Appellee

Christopher A. Deal, Atty. Reg. No. 0078510, 131 N. Ludlow Street, Suite 630, Dayton, OH 45402
    Attorney for Defendant-Appellant

. . . . . . . . .

GRADY, P.J.:

{¶ 1} Defendant, Darren Malloy, appeals from his conviction and sentence for robbery.

{¶ 2} The facts of this case were set forth in our previous opinion, *State v. Malloy*, 2d Dist. Clark No. 09CA0092, 2011-Ohio-30 at ¶ 2-10, as follows:

In early 2009, Defendant was living at 510 North Race Street in

Springfield, with his girlfriend, Carla Harvey, her child, and Harvey's ex-boyfriend, Jerry Gaskins. On the evening of January 26, 2009, at around 10:00 p.m., the Moto Mart on Bechtle Avenue in Springfield was robbed. The suspect, a white male, wore a grey hooded sweatshirt, black sunglasses, blue jeans, and a bandana that partially covered his face. The suspect, who had what appeared to be a handgun, demanded money, and after the store clerk handed over $350 in cash, the suspect put the money into a green cloth bag and ran. Police were notified but no one was immediately apprehended.

On January 27, 2009, the Rite Aid at the corner of North Plum Street and West North Street in Springfield was robbed. There were similarities to the Moto Mart robbery the night before, including the suspect's clothing and behavior. The suspect fled on foot and was tracked in the snow by a K-9 unit to the house at 510 North Race Street where Defendant and his roommates lived. Defendant let police inside the home and gave them permission to search his room and all common areas of the house. Police obtained a warrant to search Gaskins' room, where police found a bag of money and a plastic handgun. Various items of clothing were also taken from the home. Gaskins was arrested.

After viewing and comparing video surveillance footage of both the Moto Mart and Rite Aid robberies, police noted several similarities. The suspect in both robberies leaned on the counter on his right arm, held the gun in his right hand while holding a green cloth bag in his left hand, and the

clothing worn by the suspect in both robberies was similar.

On February 5, 2009, while Carla Harvey was in jail following her arrest for allegedly engaging in acts of domestic violence against Defendant, Detective McConnell interviewed her about the Moto Mart robbery. Harvey stated that she had seen the video surveillance of that robbery and she identified Defendant as the perpetrator. Harvey said she was able to recognize Defendant's distinctive voice. The following day Defendant was arrested for the Moto Mart robbery. Defendant requested that he be given a polygraph test. A stipulated polygraph test was agreed to by the parties. The test results indicated that Defendant was deceptive in answering questions posed by the examiner.

Defendant was indicted on two counts of robbery, one count in violation of R.C. 2911.02(A)(2), a felony of the second degree, and one count in violation of R.C. 2911.02(A)(3), a felony of the third degree.

A jury trial commenced in May 2009. Prior to trial the court granted a motion by the state to exclude any reference to or results from a second polygraph test that Defendant took without the State's knowledge and which had not been stipulated to by either party. Gaskins testified at trial that he committed the Rite Aid robbery and that he drove the getaway vehicle during the Moto Mart robbery, but that Defendant committed that robbery. Richard Emmons testified that the results of the stipulated polygraph test show that Defendant was being deceptive. Defendant's girlfriend, Carla Harvey, testified

that she had seen the surveillance video of the Moto Mart robbery several times and that she recognized the robber as Defendant.

Defendant testified in his own defense that he did not rob the Moto Mart, but that Gaskins did. He also claimed that Harvey lied when she testified she recognized Defendant as the robber in the surveillance video. Defendant indicated that he had no need or motive to rob a store because he was employed and had financial support from his family. When asked on cross-examination if his parents provided the funds for his attorney, Defendant replied: "That's correct. And for the second polygraph, which I passed also." The State objected and requested a mistrial. A recess was called and the court heard arguments by counsel. The trial court subsequently granted the State's request for a mistrial.

A second trial commenced in August 2009. During this trial Defendant presented testimony that the Moto Mart robbery was similar to a robbery that occurred in Sharonville, Ohio, on January 9, 2009, which Gaskins admitted he committed and in which similar clothing was worn by the robber, a similar green bag was used, and the robber engaged in similar behavior in leaning on the counter on his right arm. Additionally, there was evidence presented that on the night of the Moto Mart robbery, Defendant was working until 11:30 p.m., repairing a bathroom leak with his employer, George Frost. Finally, Defendant presented the testimony of a jail inmate, William Spriggs, who had been incarcerated with Gaskins. According to Spriggs, Gaskins said he framed

Defendant for the Moto Mart robbery.

The jury found Defendant guilty of both counts of robbery. The trial court merged the two offenses and sentenced Defendant on count one, the second degree felony, to the maximum eight year prison term.

**{¶ 3}** On direct appeal we reversed Defendant's conviction and remanded the matter for a new trial. *State v. Malloy*, 2d Dist. Clark No. 09CA0092, 2011-Ohio-30.

**{¶ 4}** A third jury trial was held on March 7-9, 2011. The jury found Defendant guilty of both counts of robbery. The trial court merged the two offenses for sentencing and sentenced Defendant on count one, the second degree felony, to the maximum eight year prison term.

**{¶ 5}** Defendant once again has appealed to this court from his conviction.

FIRST ASSIGNMENT OF ERROR

**{¶ 6}** "THE CONVICTION FOR ROBBERY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT THE CONVICTION."

**{¶ 7}** Defendant argues that his conviction for robbery is not supported by legally sufficient evidence and is against the manifest weight of the evidence.

**{¶ 8}** A sufficiency of the evidence argument challenges whether the State has presented evidence on each element of the offense alleged to allow the case to go to the jury or sustain the verdict as a matter of law. *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991):

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

{¶ 9} Defendant was found guilty of robbery in violation of R.C. 2911.02(A)(2) and (A)(3), which provide respectively:

(A) No person in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:

* * *

(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;

(3) Use or threaten the immediate use of force against another.

{¶ 10} Defendant argues that there was no credible evidence that he, as opposed to Jerry Gaskins, was the perpetrator of the Moto Mart robbery. Defendant points out that the State's two main witnesses against him were a convicted felon, Jerry Gaskins, who had committed other robberies around the same time that involved a similar modus operandi, and Defendant's ex-girlfriend, Carla Harvey, who was in jail for domestic violence and felonious assault against Defendant, and that both had a motive to testify against Defendant. Because of the similarities between the Moto Mart robbery, the robbery of the Rite Aid pharmacy the

next day, and an earlier robbery in Sharonville, Ohio, the latter two committed by Jerry Gaskins per his confession, Defendant argues that the evidence was insufficient to prove that he was the perpetrator of the Moto Mart robbery. We disagree.

{¶ 11} The clerks at the Moto Mart testified that a white male wearing a grey hooded sweatshirt, black or dark rimmed sunglasses, blue jeans, and a bandana that partially covered his face, came into the store and demanded money while brandishing a gun. After receiving $350.00, the suspect put the money into a green pillowcase and ran out the door. Store clerk Cindy Bowen testified that she recognized the voice on the surveillance video of the robbery as Defendant.

{¶ 12} During the execution of a search warrant at Defendant's home, police collected a pair of gym shoes from Defendant's bedroom that matched those worn during the Moto Mart robbery. Furthermore, during the execution of that search warrant, Defendant was wearing the same jeans the suspect wore during the Moto Mart robbery. Police recovered a bag of money and a plastic handgun while searching Defendant's home.

{¶ 13} Both Gaskins and Harvey identified Defendant as the perpetrator of the Moto Mart robbery. Gaskins said he drove Defendant to the Moto Mart in order to perform the robbery. Harvey, Defendant's girlfriend and housemate, identified Defendant as the perpetrator from the video recording of the robbery made by store security cameras. Detective Dewine, who interviewed both Defendant and Gaskins, also testified that it was Defendant who was depicted in the Moto Mart surveillance video.

{¶ 14} The credibility of the witnesses was for the jury to decide. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Furthermore, the jurors were able to view the video

surveillance of the Moto Mart robbery and the similar robberies at the Rite Aid and Sharonville locations that Gaskins committed, and compare Gaskins' voice and walk with the robber shown at Moto Mart. Finally, the polygraph operator testified that Defendant was deceptive during his stipulated polygraph about the Moto Mart robbery.

{¶ 15} Viewed in a light most favorable to the State, the evidence presented was clearly sufficient to allow a rational trier of facts to find every essential element of robbery, including Defendant's identity as the perpetrator, proven beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.

{¶ 16} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. *State v. Hufnagle*, 2d Dist., Montgomery No. 15563, 1996 WL 501470 (Sept. 6, 1996). The proper test to apply to that inquiry is the one set forth in *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983):

> [t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

{¶ 17} The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). In *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997), we observed:

Because the factfinder ... has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness.

{¶ 18} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. *State v. Bradley*, 2d Dist. Champaign No. 97-CA-03, 1997 WL 691510 (Oct. 24, 1997).

{¶ 19} The credibility of the witnesses and the weight to be given to their testimony were matters for the trier of facts, the jury, to decide. *DeHass.* The jury did not lose its way simply because it chose to believe the State's witnesses, rather than Defendant's witnesses, which it had a right to do. Reviewing this record as a whole, we cannot say that the evidence weighs heavily against a conviction, that the trier of facts lost its way in choosing to believe the State's witnesses, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.

{¶ 20} Defendant's first assignment of error is overruled.

SECOND ASSIGNMENT OF ERROR

{¶ 21} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED THE STATE TO RECALL ITS OWN WITNESS, DETECTIVE DEWINE, FOR THE SOLE

PURPOSE OF PRESENTING NEW EVIDENCE."

{¶ 22} Defendant argues that the trial court abused its discretion by permitting the State to recall one of its witnesses, Detective Dewine, before it rested its case, to give additional testimony.

{¶ 23} Trial courts have a great deal of discretion in controlling the order of trial proceedings, and the question of whether to permit a witness who has already testified to be recalled for the purpose of giving additional testimony is a matter that lies within the trial court's sound discretion, and its decision will not be disturbed on appeal absent an abuse of that discretion. *State v. Kinley*, 2d Dist. Clark No. 2826, 1993 WL 224496 (June 24, 1993); *State v. Manley*, 2d Dist. Greene No. 95CA17, 1995 WL 765970, (Dec. 22, 1995).

{¶ 24} "Abuse of discretion" has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248, 1252 (1985). It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.

{¶ 25} A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment*, Corp., 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 26} In *Manley, supra*, we stated: "Without some showing of prejudice, we would

hope the trial courts would permit witnesses to be recalled to the witness stand whenever either party has neglected to elicit significant testimony."

{¶ 27} During the State's case-in-chief, Detective Dewine testified regarding interviews of Defendant he conducted. Dewine testified about statements Defendant made during those interviews relative to his whereabouts at the time of the Moto Mart robbery, being at home rather than at work, and whether Jerry Gaskins or Carla Harvey were then with him or were elsewhere. Dewine further testified about statements Defendant made at previous court hearings regarding whether he was at home or at work at the time of the Moto Mart robbery. Following Dewine's testimony, he was excused, but the State reserved the right to recall him. Other witnesses were then called to testify by the State.

{¶ 28} Prior to resting its case, the State recalled Detective Dewine to the stand. Over Defendant's objection, the trial court allowed Detective Dewine to be recalled for the purpose of giving additional testimony. Detective Dewine then testified in an effort to clear up some confusion over the dates he conducted his interviews with Defendant. The State then played a recording of Dewine's interview with Defendant, which Dewine authenticated, so the jury could hear Defendant's voice and compare it to the voice of the robber on the surveillance video of the Moto Mart robbery. Additionally, the State had Detective Dewine read portions of Defendant's testimony from previous court hearings that provided the jurors with additional information about where Defendant at the time of those hearings claimed he was at on the night of the Moto Mart robbery, i.e., at home, which conflicted with his claim at this trial that he was at work. Defense counsel declined the opportunity to cross-examine Detective Dewine on this additional testimony.

**{¶ 29}** The additional testimony by Detective Dewine during the State's case-in-chief was significant in terms of its ability to aid the trier of facts, the jury. Defendant has not indicated how he was prejudiced in any way by the fact that Detective Dewine gave his testimony during two trips to the witness stand, with other witnesses intervening, as opposed to having given the same testimony during one trip to the witness stand. *Manley*. In our view, the trial court was within its discretion to permit the State to recall Detective Dewine to the witness stand. *Id*.

**{¶ 30}** Defendant's second assignment of error is overruled.

THIRD ASSIGNMENT OF ERROR

**{¶ 31}** "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SENTENCED APPELLANT TO THE MAXIMUM OF EIGHT YEARS WHEN THERE WAS NO EVIDENCE OF ANY PRIOR RECORD AND THE COURT'S SENTENCE WAS INCONSISTENT WITH OTHER LIKE CRIMES IN THE SAME COURT."

**{¶ 32}** Defendant argues that the trial court abused its discretion by sentencing him to the maximum eight year prison term.

**{¶ 33}** In State v. Jeffrey Barker, 183 Ohio App.3d 414, 2009-Ohio-3511, 917 N.E.2d 324 (2d Dist.), at ¶36-37, we wrote:

> The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum, consecutive, or more than minimum sentences. *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006-Ohio-856, at paragraph 7 of the syllabus. Nevertheless, in exercising its

discretion the trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and 2929.12. *State v. Mathis,* 109 Ohio St.3d 54, 846 11 N.E.2d 1, 2006-Ohio-855, at ¶37.

When reviewing felony sentences, an appellate court must first determine whether the sentencing court complied with all applicable rules and statutes in imposing the sentence, including R.C. 2929.11 and 2929.12, in order to find whether the sentence is contrary to law. *State v. Kalish*, 120 Ohio St.3d 23, 896 N.E.2d 124, 2008-Ohio-4912. If the sentence is not clearly and convincingly contrary to law, the trial court's decision in imposing the term of imprisonment must be reviewed under an abuse of discretion standard. *Id.*

**{¶ 34}** In *State v. Bray*, 2d Dist. Clark No. 2010CA14, 2011-Ohio-4660, at ¶ 28-29, we stated:

A trial court has broad discretion in sentencing a defendant and a reviewing court will not interfere with the sentence unless the trial court abused its discretion. *State v. Reese,* Mont.App. No. 21825, 2007–Ohio–6696; *State v. Durham,* Mont. App. No 21589, 2007–Ohio–6262; *State v. Rose,* Mont.App. No. 21673, 2007–Ohio–4212; *State v. Slone,* Greene App. No.2005 CA 79, 2007–Ohio–130. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 54. A court will not typically be found to have abused its discretion in sentencing if the sentence it imposes is within the statutory limits. *State v. Muhammad,* Cuyahoga App. No. 88834, 2007–Ohio–4303; *State v.*

*Burge* (1992), 82 Ohio App.3d 244, 249.

After *Foster,* trial courts are not required to make any findings or give reasons before imposing any sentence within the authorized statutory range, including maximum, consecutive, or more than minimum sentences, *Foster,* syllabus at ¶ 7. Courts, nevertheless, are still required to comply with the sentencing laws unaffected by *Foster,* such as R.C. 2929.11 and 2929.12 which require consideration of the purposes and principles of felony sentencing and the seriousness and recidivism factors. *State v. Mathis,* 109 Ohio St.3d 54, 2006–Ohio–855. However, a sentencing court does not have to make any specific findings to demonstrate its consideration of those general guidance statutes. *Foster* at ¶ 42; *State v. Lewis,* Greene App. No. 06 CA 119, 2007–Ohio–6607. And, where the record is silent, a presumption exits that the trial court has considered the factors. *State v. Adams* (1988), 37 Ohio St.3d 295, 297. Further, where a criminal sentence is within statutory limits, an appellate court should accord the trial court the presumption that it considered the statutory mitigating factors. *State v. Taylor* (1992), 76 Ohio App.3d 835, 839; *State v. Crouse* (1987), 39 Ohio App.3d 18, 20. Consequently, the appellant has an affirmative duty to show otherwise.

**{¶ 35}** The trial court imposed sentence upon Defendant immediately following the jury's guilty verdicts. This was Defendant's third trial and the second time the trial court had sentenced Defendant on these robbery charges. The eight year prison term the court imposed was the same sentence it had imposed previously.

{¶ 36} At sentencing the trial court heard oral statements by counsel for both parties and Defendant's statement. The court informed Defendant about post release control requirements and the consequences for violating those. In its Journal Entry of Conviction and Sentence filed on March 11, 2011, the court indicated that it had considered the record, oral statements of counsel and the defendant, Defendant's prior record, the purposes and principles of sentencing, R.C. 2929.11, and the seriousness and recidivism factors, R.C. 2929.12. The court again advised Defendant about his post release control requirements. We additionally note that the eight year prison term the court imposed, while the maximum sentence, is nevertheless within the authorized range of available punishments for a felony of the second degree. R.C. 2929.14(A)(2). Defendant's sentence is not contrary to law. *Kalish*.

{¶ 37} With respect to the severity of the sentence, the trial court merged the two robbery convictions, the State elected to proceed on Count I, the second degree felony, and the court imposed the maximum allowable eight year prison term. Defendant robbed the Moto Mart by threatening the store clerks with a gun while demanding money. Defendant was identified as the perpetrator of the robbery by several people including: Jerry Gaskins, who assisted Defendant in committing the robbery by acting as the getaway driver; Carla Harvey, Defendant's girlfriend who recognized Defendant from the surveillance video of the robbery; and Moto Mart store clerk Cindy Bowen and Detective Dewine, who both recognized the robber's voice on the surveillance video as being Defendant. Nevertheless, during the trial proceedings Defendant attempted to pin the blame for the robbery on Jerry Gaskins. Even at sentencing, Defendant maintained his innocence and refused to take responsibility for his

actions. Furthermore, there are no mitigating factors in R.C. 2929.12(C) that apply in this case.

{¶ 38} To support his claim that his sentence is too harsh, Defendant points to the fact that Jerry Gaskins, who admitted committing the Rite Aid robbery and assisting Defendant in the Moto Mart robbery, received a much less severe sentence of three years. Gaskins was never charged with the Moto Mart robbery. Gaskins cooperated with the State and testified against Defendant. Gaskins admitted that he had a substance abuse problem and freely admitted his involvement in the Rite Aid and Moto Mart robberies. Defendant, however, never acknowledged his involvement in the Moto Mart robbery, and attempted to shift the blame to others.

{¶ 39} The overriding purposes of felony sentencing are to protect the public from future crime by the offender and to punish the offender. R.C. 2929.11(A). The trial court has discretion to determine the most effective way to comply with the purposes and principles of sentencing. R.C. 2929.12(A). We see no abuse of discretion on the part of the trial court in imposing an eight year sentence in this case.

{¶ 40} Defendant's third assignment of error is overruled. The judgment of the trial court will be affirmed.

FAIN, J., And DONOVAN, J., concur.

Copies mailed to:

Lisa M. Fannin, Esq.
Christopher A. Deal, Esq.
Hon. Douglas M. Rastatter