[Cite as *State v. James*, 2021-Ohio-1112.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee                 :      Appellate Case No. 28892
                                       :
v.                                     :      Trial Court Case No. 2020-CR-35
                                       :
DEONA JAMES                            :      (Criminal Appeal from
                                       :      Common Pleas Court)
    Defendant-Appellant                :
                                       :

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of April, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR. by ELIZABETH A. ELLIS, Atty. Reg. No. 0074332, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

EPLEY, J.

**{¶ 1}** Defendant-Appellant Deona James was found guilty by a jury of two counts of felonious assault. After merging the offenses, the trial court sentenced her to five to seven and one-half years in prison. On appeal, James alleges that the trial court erred by denying her request for an instruction on aggravated assault, that it erred by not giving a self-defense instruction, and that she was a victim of prosecutorial misconduct based on statements made during closing argument. For the reasons that follow, the trial court's judgment will be affirmed.

## I.    Facts and Procedural History

**{¶ 2}** Around 7 p.m. on December 31, 2019, 20-year-old Caylin Houston had just finished refueling her car at the Kroger gas station on W. Siebenthaler Avenue when a blue car, driven by James, pulled in behind her. Almost immediately, James started blaring her horn and soon got out of her car and began yelling at Houston; James was in a hurry and wanted Houston to move out of the space so she could put gas in her car. The gas station security video clearly showed other open pumps.

**{¶ 3}** Soon, both women were out of their vehicles exchanging words, and the security video showed the conversation was heated, but not yet physical. Houston testified that while she was out of her vehicle arguing with James, she noticed that James had children in her car; not wanting to fight in front of the children, she headed back to her car to leave. Instead of driving away though, the video showed that Houston quickly re-emerged from the driver's seat and threw a bag of candy at James. James responded by yelling, "I'm gonna beat your ass," and then charged. Before James got to Houston, though, she kicked the back bumper of Houston's car.

{¶ 4} A fight ensued. Houston used her fists, and James had a knife. Each blow that James dealt resulted in a cut, gash, or puncture. After the altercation ended, a mere 24 seconds later according to the video, Houston did not realize the extent of her injuries until she noticed the shocked reaction of a bystander, who had her hands covering her mouth. At that point, Houston looked back at James and saw a knife in her hand. James fled the scene and Nakisha Coatie, a Kroger employee who witnessed the entire incident, called 911.

{¶ 5} Coatie testified that she, too, saw a knife in James's hand and described it as a box cutter. She also told the jury about the extent of Houston's injuries. Coatie disclosed that after the fight Houston was "leaking blood." The cut on her mouth was so severe, according to Coatie, that she had to tell Houston to stop talking because "she couldn't keep her mouth together to talk." Trial Tr. at 235. "Her mouth was cut like the joker." Trial Tr. at 244. Evidence of the seriousness of the injuries was also apparent from the scene. Deputy Jesse Walker testified that there were "trails of blood, pools of blood in the parking lot near her car. There was blood in her car. There was blood on the side panel of her car." Trial Tr. at 281.

{¶ 6} Houston was taken by ambulance to Miami Valley Hospital, where she spent four days recovering from stab wounds to the arm, breast, back, scalp, face, and tongue. The wounds were so severe that Houston required surgery, and staples were required to close the gash on the top of her head. Even after she was released from the hospital, she required home health care nurses. Houston testified that at the time of the trial, months after the incident, she still received treatment monthly from the plastic surgeon.

{¶ 7} On January 28, 2020, James was indicted on two counts of felonious assault,

in violation of R.C. 2903.11(A)(1) and 2903.11(A)(2), felonies of the second degree. After an unsuccessful motion to suppress, the case progressed to trial, where James was found guilty of both counts. At sentencing, the State elected to proceed on Count 1 (felonious assault – serious physical harm), and James was sentenced to five to seven- and one-half years in prison. She now raises three assignments of error.

## II. Aggravated assault instruction

{¶ 8} In her first assignment of error, James argues that the trial court erred when it overruled her request for an instruction on the inferior degree offense of aggravated assault.

{¶ 9} Aggravated assault, R.C. 2903.12, contains elements which are identical to those of felonious assault, R.C. 2903.11, except it adds a mitigating element of "serious provocation." *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph four of the syllabus. "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or arouse the defendant into using deadly force." *Id.* at paragraph five of the syllabus. To determine if the provocation was reasonably sufficient to incite the defendant to use deadly force, we must "consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded [the defendant] at the time." *Id.*

{¶ 10} In a felonious assault trial, an instruction on aggravated assault must be given to the jury where the defendant "presents sufficient evidence of serious provocation." *State v. Morrow*, 2d Dist. Clark No. 2002-CA-37, 2002-Ohio-6527, ¶ 7. The provocation must be enough to "arouse the passions of an ordinary person beyond the power of his or her control." *State v. Shane*, 63 Ohio St.3d 630, 634-635, 590 N.E.2d 272

(1992). Words alone will not rise to the level of sufficient provocation to incite the use of deadly force. *Id.* at paragraph two of the syllabus.

{¶ 11} The Ohio Supreme Court has discussed what constitutes sufficient provocation to incite a person into using deadly force. "First, an objective standard is applied to determine whether the alleged provocation is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. If that objective standard is met, the inquiry shifts to a subjective standard to determine whether the defendant in the particular case actually was under the influence of a sudden passion or rage." *Id.* at 634.

{¶ 12} The trial court's decision whether to grant the requested jury instruction will not be disturbed unless it has abused its discretion. *State v. Murrell*, 2d Dist. Montgomery No. 24717, 2012-Ohio-2108, ¶ 24. "Abuse of discretion has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2d Dist. Clark No. 11-CA-21, 2012-Ohio-2664, ¶ 24.

{¶ 13} In this case, James cannot meet the objective prong of the *Shane* test. According to testimony and evidence presented at trial, James pulled her car behind Houston and was already upset. She was in a hurry, claiming her car was about to run out of gas, and she wanted Houston to pull away immediately. Then, when Houston got out of her car to argue with James, James became even more irate, as evidenced by the gas station security video. After more arguing, Houston threw a bag of candy at James, James kicked the bumper of Houston's car, and the brawl ensued.

{¶ 14} None of the actions taken by Houston, either on their own or collectively,

rose to the level of a serious provocation that would "arouse the passions of an ordinary person beyond the power of his or her control." *See Shane* at 635. For instance, no matter how argumentative Houston got with James, arguing did not rise to the level of "serious provocation" because, as the Ohio Supreme Court said in *Shane*, "words alone will not rise to the level of reasonably sufficient provocation to incite the use of deadly force." *Id.* at 634. Tossing a bag of candy at James did not suffice either. An "ordinary person" simply would not react in such a violent manner in a similar situation. It was reasonable that some of Houston's actions upset James, but an ordinary person would not have responded by stabbing Houston eight times from that type of provocation.

{¶ 15} James argues that she was sufficiently provoked, and the objective prong was satisfied, because she was engaged in "mutual combat" with Houston. This, however, was not "mutual combat." Black's Law Dictionary defines "mutual combat" as "a consensual fight on equal terms – arising from a moment of passion but not in self-defense – between two persons armed with deadly weapons." *Black's Law Dictionary* 1045 (8th Ed. 2004). "Mutual combat" has also been described as more than a fist fight, and "usually arises when the parties are armed with deadly weapons and mutually agree or intend to fight with them." 40 Corpus Juris Secundum, Homicide § 206. While there is no question that James had a deadly weapon, there is nothing in the record to indicate that Houston did. This may have been a consensual fight, but it was not on equal terms, and only James had a weapon.

{¶ 16} The trial court's decision was not an abuse of discretion. Even if we might have reached a different conclusion than the court did, its decision was not unreasonable, unconscionable, or arbitrary. The record shows that, prior to making its decision on the

aggravated assault instruction, the court heard vigorous arguments from both parties, researched the issue, and then gave a detailed explanation of its decision on the record. It was a reasonable decision.

{¶ 17} Because this was not "mutual combat," and because James failed to demonstrate that she was sufficiently provoked, the trial court did not abuse its discretion in refusing to give an aggravated assault instruction. The first assignment of error is overruled.

### III. Self-Defense Instruction

{¶ 18} In her second assignment of error, James claims that the trial court abused its discretion by not giving a self-defense instruction to the jury.

{¶ 19} R.C. 2901.05(B)(1) establishes that a person may act in self-defense, defense of another, or defense of that person's home. "If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense." R.C. 2901.05(B)(1).

{¶ 20} To warrant an instruction on self-defense, R.C. 2901.05(B)(1) mandates that there must be evidence presented that supports the conclusion that the defendant used force to defend herself. "To establish self-defense, a defendant must introduce evidence showing that: (1) she was not at fault in creating the violent situation; (2) she had a bona fide belief that she was in imminent danger of bodily harm; and (3) she did not violate any duty to retreat or avoid the danger." *State v. Brown*, 2017-Ohio-7424, 96 N.E.3d, ¶ 24 (2d Dist.), citing *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339

(1997).

{¶ 21} It is well established that a person cannot provoke a fight or voluntarily enter combat and then claim self-defense. *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 39; *State v. Nichols*, 4th Dist. Scioto No. 01CA2775, 2002 WL 126973, *3 (Jan. 22, 2002). Another component, within the second prong, "is the defendant's bona fide belief that the use of force was the only means of escape. Part of this entails a showing that the defendant used 'only that force that [was] reasonably necessary to repel the attack' " *Wallace-Lee* at ¶ 42, citing *State v. Bundy*, 2012-Ohio-3924, 974 N.E.2d 139, ¶ 55 (4th Dist.). If the force used was so disproportionate that it shows a purpose to injure, self-defense is unavailable. *Id*. at ¶ 43, quoting *State v. Macklin*, 8th Dist. Cuyahoga No. 94482, 2011-Ohio-87, ¶ 27.

{¶ 22} Generally, a person has a duty to retreat, if possible, before using lethal force. *State v. Willford*, 49 Ohio St.3d 247, 250, 551 N.E.2d 1279 (1990); *State v. Dale*, 2d Dist. Champaign No. 2012-CA-20, 2013-Ohio-2229, ¶ 15. The exception, known as the Castle Doctrine, applies if a confrontation happens in a person's home, in which case there is no duty to retreat. R.C. 2901.09(B); *State v. Eng*, 2d Dist. Montgomery No. 14015, 1994 WL 543277, *5 (Sept. 30, 1994).

{¶ 23} In the case before us now, James failed to establish any of the elements of self-defense. She did not meet the first element, that she was not at fault in creating the violent situation, because she initiated the whole series of events by pulling in behind Houston at the gas pump and immediately yelling at her to move out of the way. James had other alternatives: the security video clearly showed many open pumps. She also initiated the fight by charging at Houston.

{¶ 24} James also did not establish that the use of the knife was the only means of escape. At any point, before or during the confrontation, James could have de-escalated the situation and left. She could have returned to her car and driven to a different pump when she realized Houston was not ready to leave; she could have returned to her car and left when Houston started arguing with her; she could have returned to her car and left after Houston threw candy at her; and she could have returned to her car and left instead of fighting with Houston. There were other means of escape, James just chose not to use them.

{¶ 25} Finally, because the Castle Doctrine did not apply in this case, James had a duty to retreat or avoid the danger before escalating to deadly force. At each step along the way, James could have (but chose not to) avoided the danger. She could have run to the safety of her car and left, or she could have run to the safety of the store to get help; instead, she brought a knife to a fist fight and seriously injured Houston.

{¶ 26} Because there was insufficient evidence to support the requested self-defense jury instruction, the trial court did not abuse its discretion in failing to give it. The second assignment of error is overruled.

### IV. Prosecutorial Misconduct

{¶ 27} In her third assignment of error, James avers that she should be granted a new trial because the State committed prosecutorial misconduct during its closing argument.

{¶ 28} We have recognized that "improper prosecutorial comments amount to misconduct only if they prejudicially affected the substantial rights of the accused." *State v. Ward*, 2d Dist. Montgomery No. 18211, 2001 WL 220244, *10-11 (Mar. 2, 2001). When

conducting the analysis, the reviewing court should "focus on the fairness of the trial, not the culpability of the prosecutor." *State v. Reed*, 2d Dist. Montgomery Nos. 18417 & 18448, 2001 WL 815026, *2 (July 20, 2001). When the alleged misconduct takes place during the State's closing argument, the appellate court should consider the effect that "the misconduct had on the jury in the context of the entire trial." *State v. Keenan*, 66 Ohio St.3d 402, 410, 613 N.E.2d 203 (1993).

{¶ 29} Prosecutors are entitled to considerable latitude in opening statement and closing argument. *State v. Ballew*, 76 Ohio St.3d 244, 255, 667 N.E.2d 369 (1996). In closing arguments, the State may comment freely on "what the evidence has shown and what reasonable inferences may be drawn therefrom." *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). *See also* Speigelman, *Prosecutorial Misconduct in Closing Argument: The Role of Intent in Appellate Rev.*, 1 J. App. Prac. & Process 115, 134 (1999) ("The standard for proper closing arguments begins with the concept that they are opportunities for the parties to present their view of the proper inferences to be drawn from the evidence presented."); Am. Bat Assn. Standards for Criminal Justice 3-5.8, cmt. at 107 (1993) ("The most elementary rule governing the limits of argument is that it must be confined to the record evidence and inferences that can reasonably be drawn from it.").

{¶ 30} Prosecutorial misconduct only constitutes reversible error in rare instances. *Keenan* at 405. Accordingly, a reversal for prosecutorial misconduct will only occur if it is clear that the trial's outcome would have been different if not for the misconduct. *State v. Smith*, 14 Ohio St.3d 13, 15, 470 N.E.2d 883 (1984).

{¶ 31} Here, the statement James highlights was made by the State in its closing

argument, apparently to explain that James used a deadly weapon. The prosecutor stated:

> But whatever she used was a deadly weapon. As I said before, she is slicing and dicing a 20-year-old girl. You saw her injuries just now. Hitting her on the top of the head, her mouth, her chest, her tongue. That could have easily hit her neck, sliced her carotid, and Houston would have been dead.

Trial Tr. at 394. James contends that the prosecutor's statement was both unsupported by the record and substantially prejudicial. We disagree.

{¶ 32} In the immediate aftermath of the statement, defense counsel objected, the court sustained the objection, and the prosecutor went on with her argument. Then, after the State had completed its first closing argument, defense counsel moved for a mistrial which was denied by the court. It explained, "[t]he instruction on serious physical harm includes * * * as part of the definition, any physical harm that carries a substantial risk of death. So, I'm going to overrule, but note that for the record." Trial Tr. at 400. The court went on to instruct the jury that the closing arguments are not evidence, and that statements stricken by the court should be treated as though they never happened. The court's instructions mitigated any harm caused by the prosecutor's statement. The jury is presumed to have followed the court's instructions. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995).

{¶ 33} Further, the statement drew from the evidence presented and reasonable inferences drawn from that evidence. *Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293. To say that stab wounds to the head, face, and chest could have been fatal was a reasonable inference. The photos entered into evidence depicted a deep gash that ran from

Houston's mouth to the side of her face near her jaw-line – an inch or two away from her neck and vital arteries. Likewise, had the injury to the top of her head been a few millimeters deeper, her brain might have been impacted. Based on the evidence presented, the prosecutor's statement was not improper.

{¶ 34} Finally, the statement did not prejudicially affect the substantial rights of James. There was sufficient evidence in the record for the jury to find James guilty. The entire incident was caught on tape, which the jury saw, from James pulling her car behind Houston and the initial argument, to the physical altercation, to James driving off. The jury also had the testimony of both women to consider, and they both told essentially the same story – they argued, things got heated, a fight ensued, and James slashed Houston with a knife. Finally, there were the pictures that revealed the serious physical harm inflicted on Houston. Even without the prosecutor's statement, the verdict would have likely been the same.

{¶ 35} Because the prosecutor's statement was not improper, and in the alternative, even if it was, James was not prejudiced by it, the third assignment of error is overruled.

## V.    Conclusion

{¶ 36} Having overruled all of James's assignments of error, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Elizabeth A. Ellis
Kristin L. Arnold
Hon. Mary Katherine Huffman