[Cite as *State v. Greene*, 2022-Ohio-2311.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-48 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-158 |
| | : | |
| KARL W. GREENE, JR. | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 1st day of July, 2022.

· · · · · · · · · ·

IAN A. RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
     Attorney for Plaintiff-Appellee

CHRISTOPHER R. BUCIO, Atty. Reg. No. 0076517, 130 West Second Street, Suite 2100, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

· · · · · · · · · · · ·

EPLEY, J.

{¶ 1} Defendant-Appellant Karl W. Greene, Jr. appeals from his conviction after he was found guilty by a jury of felonious assault and then sentenced to six to nine years in prison. For the reasons that follow, the judgment of the trial court will be affirmed.

## I.      Facts and Procedural History

{¶ 2} On the evening of February 26-27, 2021, Joshua Downing visited Che's Rustic Lounge in Springfield to have a few drinks, play darts, and catch up with Constance Dewitt, the bar's owner, who he had not seen in years. After chatting with Dewitt and playing darts with some of the other patrons, Downing stepped outside to smoke a cigarette; he was joined by Greene, who had recently arrived with some friends. According to trial testimony, the two (who did not know each other) chatted about Greene's occupation (he worked for a tree service company) and then returned inside to order drinks at the bar.

{¶ 3} By this time of the evening, Che's had gotten busy and there were other people in line waiting to buy drinks. Both Downing and Dewitt testified that Greene got impatient and began harassing Dewitt, who was tending the bar, calling her a "slow bitch" among other pejorative terms. Trial Tr. at 185, 320. Downing came to his friend's defense, telling Greene to "be kind" and that Dewitt was working as hard as she could. Trial Tr. at 185. Downing recounted that he told Greene, "You don't need to have your chest puffed out like you're running the place. We're just here to have a good time." Trial Tr. at 320. Downing then offered to buy Greene and his friends a shot.

{¶ 4} Downing went outside to smoke another cigarette and Greene, along with at least one of his friends, came out behind him. Downing testified: "I could feel the tension.

I knew something was wrong. They started talking about kicking my ass." Trial Tr. at 321. As Greene stepped closer and closer, Downing began to retreat. The video evidence presented at trial indicated that Downing began to retreat by backpedaling, and while it was not captured on video, Downing stated that he continued to back away and then took off running with Greene in pursuit. Testimony of another bar patron, Ashley Claar, confirmed that Greene pursued Downing. "I [saw] Josh running and Karl was chasing him." Trial Tr. at 246, 269, 281. Eventually Greene caught up with Downing and tackled him. Greene then pinned Downing to the ground and began raining down punches on his head and face.

{¶ 5} After some time, Greene came back into the bar alone, and witnesses described that he was wet, dirty, and that his knuckles were "beat up." Trial Tr. at 247. Claar testified that Greene implicated himself ("Karl did mention that his friends didn't help or jump in, and he pretty much took care of it." Trial Tr. at 248) and got another drink at the bar, then he left.

{¶ 6} Claar, concerned about Downing's well-being, went with a friend to check on him and found Downing stumbling back toward them. They were able to drag him back to the bar, where the extent of his injuries came into focus. Dewitt testified that "[i]t was a beating I've never seen in my life." Trial Tr. at 187. She told the jury that she tried to wipe off the blood and put ice on his face, but Downing would not let her; he kept repeating "don't hit me, don't hit me, please." Trial Tr. at 187. Claar declared that "[h]e was pretty beat up. Both of his eyes were black." Trial Tr. at 252.

{¶ 7} Medics soon arrived and transported Downing to Springfield Regional

Medical Center and then to Miami Valley Hospital. He testified that the damage and swelling to his right eye was so severe that doctors warned he may lose it, and while he was able to keep his eye, surgery was required to repair multiple facial fractures.

{¶ 8} On March 15, 2021, Greene was indicted on one count of felonious assault, a felony of the second degree. A jury trial followed, and on July 22, 2021, he was found guilty as charged. The trial court sentenced him to an indefinite prison term of six to nine years. Greene has now appealed and raises a single assignment of error.

## II.     Aggravated Assault

{¶ 9} In his lone assignment of error, Greene asserts that the trial court erred by not instructing the jury on aggravated assault as an inferior offense of felonious assault. He concedes, however, that there was no request for this instruction made at trial, so the issue has been waived absent plain error. Plain error arises only when "but for the error, the outcome of the trial clearly would have been otherwise."  *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus. "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."  *Id.* at paragraph three of the syllabus.

{¶ 10} Aggravated assault, as defined in R.C. 2903.12, contains elements which are identical to those of felonious assault, R.C. 2903.11, except it adds a mitigating element of "serious provocation." *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph four of the syllabus. In a felonious assault trial, an instruction on aggravated assault must be given to the jury where the defendant "presents sufficient

evidence of serious provocation." *State v. Morrow*, 2d Dist. Clark No. 2002-CA-37, 2002-Ohio-6527, ¶ 7. To determine if there was "serious provocation," a court engages in a two-step analysis. "First, an objective standard is applied to determine whether the alleged provocation is sufficient to arouse the passions of an ordinary person beyond the power of his or her control. If that objective standard is met, the inquiry shifts to a subjective standard to determine whether the defendant in the particular case actually was under the influence of a sudden passion or rage." *State v. Seals*, 2d Dist. Clark No. 2004-CA-63, 2005-Oho-4837, ¶ 53, citing *State v. Shane*, 63 Ohio St.3d 630, 634, 590 N.E.2d 272 (1992).

{¶ 11} The jury heard testimony that Greene and Downing engaged in friendly conversation outside while both men were smoking and then came back inside to order drinks. Then, after Greene became impatient waiting for his drink, he began insulting Dewitt, the bartender, calling her an "old bitch" and a "slow bitch." Downing came to the defense of his old friend, Dewitt, and after realizing he may have offended Greene, Downing bought shots for Greene and his friends.

{¶ 12} Downing testified that after buying shots for Greene, he went back outside to have another cigarette, and soon after Greene and at least one other man came out behind him and started making threatening comments. Downing told the jury that he began walking backward away from Greene and then took off running to escape what he considered a bad situation. Finally, the jury heard that Greene caught up to Downing and severely beat him, causing major damage to Downing's face.

{¶ 13} Based on the evidence presented at trial, we cannot conclude that Greene

met even the first prong of the "serious provocation" analysis (the provocation is sufficient to arouse the passions of an ordinary person beyond the power of his or her control). An ordinary person would not have been provoked in the way the law requires from being told, "you don't need to have your chest puffed out like you're running this place. We're just here to have a good time." Trial Tr. at 320. Even if the jury was disinclined to believe Downing's version of what he told Greene, Dewitt testified that his statement was actually even more innocuous: "Josh [Downing] told them to be kind and that I was working very hard." Trial Tr. at 185. Either way, the statement was insufficient to arouse the passions of an ordinary person beyond his or her control.

{¶ 14} Greene further argues that the aggravated assault instruction should have been given because he and Downing were engaged in "mutual combat." This situation, however, was not "mutual combat." Black's Law Dictionary defines "mutual combat" as "a consensual fight on equal terms – arising from a moment of passion but not in self-defense – between two persons armed with deadly weapons." *Black's Law Dictionary* 1045 (8th Ed. 2004). "Mutual combat" has also been described as more than a fist fight, and it "usually arises when the parties are armed with deadly weapons and mutually agree or intend to fight with them." 40 Corpus Juris Secundum, Homicide, Section 206. *See State v. James*, 2d Dist. Montgomery No. 28892, 2021-Ohio-1112, ¶ 15. In this case, there was no evidence that any weapons were involved, and Downing never indicated that he intended to fight Greene. The opposite was the case: Downing testified that he ran away from Greene, an account corroborated by Ashley Claar ("I [saw] Josh running, and Karl was chasing him." Trial Tr. at 246, 269, 281).

**{¶ 15}** Because this was not "mutual combat" and because Greene failed to show that he was sufficiently provoked, the trial court did not err when it failed to sua sponte give an aggravated assault instruction. The assignment of error is overruled.

**III.    Conclusion**

**{¶ 16}** Having overruled Greene's assignment of error, the trial court's judgment will be affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Ian A. Richardson
Christopher R. Bucio
Hon. Douglas M. Rastatter