[Cite as *K.S. v. J.C.*, 2026-Ohio-1395.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| K.S. | : | |
| | : | C.A. No. 2025-CA-47 |
| Appellee | : | |
| | : | Trial Court Case No. 2024 DV 0139 |
| v. | : | |
| | : | (Appeal from Common Pleas Court- |
| J.C. | : | Domestic Relations) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on April 17, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

_____
CHRISTOPHER B. EPLEY, JUDGE

HUFFMAN, J., and HANSEMAN, J., concur.

ANTHONY D. MAIORANO, Attorney for Appellant
ZACHARY W. LEMASTER, Attorney for Appellee

EPLEY, J.

{¶ 1} Husband appeals from a judgment of the Greene County Court of Common Pleas, Domestic Relations Division, finding that his objections to the civil protection order issued against him were moot and that the collateral consequences exception was inapplicable. For the following reasons, the trial court's judgment is affirmed.

**I. Facts and Procedural History**

{¶ 2} The parties were married in 2019 and have two children, born in 2022 and 2023. Wife also has a child from a previous relationship, who was born in 2010. On July 5, 2024, the trial court granted Wife an ex parte domestic violence civil protection order ("DVCPO"). The trial court held a full hearing over the course of three days and ultimately issued a full DVCPO on January 8, 2025.

{¶ 3} On January 31, 2025, Husband filed a motion for leave to file objections out of time, which the trial court granted the same day. However, due to a delay in obtaining transcripts and setting a briefing schedule, the DVCPO expired on July 5, 2025, which was before the trial court could rule on Husband's objections. Accordingly, the trial court requested additional briefing on the issue of mootness and held a hearing on the issue on September 5, 2025. During the hearing on mootness, Husband testified that he had suffered two collateral consequences that endured beyond the expiration of the DVCPO. Husband stated that at the time the DVCPO was issued, he was active duty military and was supposed to receive a housing entitlement, which was an increase in pay meant to serve as an

2

allowance for housing. Husband stated that he did not receive the entitlement, and he believed that this was due to the issuance of the DVCPO. Further, he stated that he believed that even though the DVCPO had expired, it was still preventing him from receiving those funds.

{¶ 4} Additionally, Husband testified that he had received a letter from the Department of Homeland Security in July 2025 notifying him that his enrollment in the global entry program had been revoked. He believed that this revocation was a result of the DVCPO and that his global entry status had not been reinstated since its expiration.

{¶ 5} On September 5, 2025, following the hearing, the trial court issued a decision finding that Husband's objections were moot and dismissing the case. Husband appeals from the trial court's judgment, raising one assignment of error.

## II. Appellate Review

{¶ 6} In his assignment of error, Husband asserts that the trial court abused its discretion when it determined that his objections to the DVCPO were moot and that the revocations of his military housing entitlement and global entry status were not collateral consequences to the DVCPO.

{¶ 7} "The role of courts is to decide adversarial legal cases and to issue judgments that can be carried into effect." *Cyran v. Cyran*, 2018-Ohio-24, ¶ 9, citing *Fortner v. Thomas*, 22 Ohio St.2d 13, 14 (1970); *State v. Smith*, 2019-Ohio-3592, ¶ 8 (2d Dist.). Under the mootness doctrine, this court will not decide a case where an actual legal controversy no longer exists between the parties. *Cyran* at ¶ 9, citing *In re A.G.*, 2014-Ohio-2597, ¶ 37. "Issues are moot when they lack practical significance and, instead, present academic or hypothetical questions." *Dibert v. Carpenter*, 2018-Ohio-1054, ¶ 30 (2d Dist.), citing *State ex rel. Ford v. Ruehlman*, 2016-Ohio-3529, ¶ 55.

3

{¶ 8} "When a trial court dismisses a case as moot, it is declining to exercise jurisdiction over the matter. In such a situation, the issue of mootness presents a question of law which is reviewed under a de novo standard." *Brown v. Dayton,* 2012-Ohio-3493, ¶ 9 (2d Dist.). However, we have held that the question of mootness "cannot always be decided as a matter of law and several limited exceptions to the mootness doctrine exist whereby a court may entertain jurisdiction in order to consider the issue." *Id.* at ¶ 11. One such exception is the existence of collateral consequences, and "[i]n assessing collateral consequences questions, courts must highlight the fine line which distinguishes pure speculation from reasonably possible adverse scenarios." *Id.* at ¶ 13. "A collateral disability must be a substantial, individualized impairment, and . . . in the absence of demonstrated legal collateral consequences, the collateral consequences exception to the mootness doctrine does not apply." (Cleaned up.) *R.S. v. Rindler*, 2026-Ohio-584, ¶ 11-12.

{¶ 9} We review the trial court's determination as to whether collateral consequences exist for abuse of discretion. The term "abuse of discretion" implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "It is to be expected, however, that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *State v. Malloy*, 2012-Ohio-2664, ¶ 24 (2d Dist.).

{¶ 10} First, regarding his housing entitlement, Husband acknowledged that this benefit is for active duty military and that he was retired at the time the mootness hearing took place. But Husband contended that he had requested backpay for the months in between the issuance of the DVCPO and his retirement, during which he did not receive the entitlement. He testified that he had not yet received a response. Notably, when asked whether his failure to receive the entitlement was due to the issuance of the DVCPO,

4

Husband stated, "[y]es, I believe so," but did not provide any documentation or further testimony to support this belief. In fact, there is nothing in the record, other than Husband's speculation, to establish that the issuance of the DVCPO and Husband's failure to receive his housing entitlement were related at all. When asked whether he would be able to receive backpay due to the expiration of the DVCPO, Husband admitted that he "[did] not definitively know" whether he would receive the benefit or not.

{¶ 11} Similarly, with respect to the revocation of Husband's global entry status, the record does not establish that the issuance of the DVCPO was the basis for the revocation. Husband submitted the letter from the Department of Homeland Security notifying him that his membership in the program had been revoked due to his failure to "meet program eligibility requirements." The letter listed seven general reasons that global entry status may be denied or revoked. These included pending criminal charges or protection orders, as well as providing incomplete application information and failing to meet "other program requirements." The letter went on to state that although the exact reasons for the revocation could not be disclosed, Husband still had the right to request reconsideration of the revocation. Husband testified, however, that he had not requested reconsideration or attempted to have his global entry status reinstated since the expiration of the DVCPO.

{¶ 12} Accordingly, Husband did not demonstrate that the issuance of the DVCPO resulted in his failure to receive a housing entitlement or the revocation of his global entry status. Rather, he provided only speculation that both occurred as a result of the DVCPO. He acknowledged that this speculation was based on his personal belief, not on any documentation or communication from the United States military or the Department of Homeland Security. Therefore, the trial court did not abuse its discretion when it determined

5

that Husband failed to establish collateral consequences and dismissed the matter as moot. Husband's assignment of error is overruled.

### III. Conclusion

{¶ 13} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

HUFFMAN, J., and HANSEMAN, J., concur.