[Cite as *Ward v. Grounds*, 2026-Ohio-2005.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| MARILYN WARD (fka GROUNDS) | : | |
| | : | C.A. No. 2025-CA-61 |
| Appellee | : | |
| | : | Trial Court Case No. 2021 DR 0043 |
| v. | : | |
| | : | (Appeal from Common Pleas Court- |
| ROBERT GROUNDS | : | Domestic Relations) |
| | : | |
| Appellant | : | **FINAL JUDGMENT ENTRY &** |
| | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 29, 2026, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

_____
MICHAEL L. TUCKER, JUDGE

LEWIS, P.J., and HANSEMAN, J., concur.

LORI R. CICERO and TIMOTHY R. SAUNDERS, Attorneys for Appellant
MARILYN WARD, Appellee, Pro Se

TUCKER, J.

**{¶ 1}** Robert Grounds appeals from the trial court's judgment entry overruling his motion to terminate or modify spousal support due to cohabitation by his ex-wife, appellee Marilyn Ward.

**{¶ 2}** Grounds contends the trial court erred during a hearing on his motion by excluding evidence of Ward's cohabitation with an unrelated adult and sua sponte dismissing his primary witness. He also claims the trial court should have terminated his spousal support obligation due to Ward's cohabitation or, at a minimum, should have modified his obligation to account for financial assistance she receives.

**{¶ 3}** We are unpersuaded by Grounds' arguments regarding the trial court's evidentiary ruling and dismissal of a witness. We also see no abuse of discretion in the trial court's failure to find cohabitation for purposes of terminating spousal support. Nor did the trial court abuse its discretion in failing to modify spousal support. Accordingly, we affirm the trial court's judgment.

## I. Background

**{¶ 4}** The parties married in November 2000 and divorced in December 2021. The divorce decree obligated Grounds to pay spousal support of $2,400 per month for 84 months. It provided for this obligation to terminate upon Ward's cohabitation with an unrelated adult. In April 2025, Grounds alleged that Ward was cohabiting with a man named

John Frost, and Grounds moved to terminate spousal support. Alternatively, he sought a reduction in his support obligation.

{¶ 5} The matter proceeded to an evidentiary hearing at which Grounds and Ward were the sole witnesses. Based on the evidence presented, the trial court made the following factual findings:

The parties were married for more than twenty years. Near the end of the divorce proceedings, Marilyn moved to Florida in November 2001. She has remained in Florida and the parties agreed that her income is $13,200 annually, plus the spousal support she receives. She does not have a high earning work history, and suffers from PTSD and anxiety, which she stated affects her ability to work full time.

Robert is steadily employed in Ohio with annual income of approximately $155,000. He receives health insurance, retirement contributions, and other employment benefits. Robert was the primary wage earner during the parties' marriage.

Upon moving to Florida in 2021, Marilyn lived with her sister and in Mr. Frost's residence for periods of time. At some point, which was never made completely clear to the Court, Marilyn began to reside with Mr. Frost full time. Marilyn agreed that she cohabitated with Mr. Frost, but she stated it was as friends and roommates. She denied any romantic or marital type of relationship. She initially paid rent in the amount of $1,100.00 per month, but stated she later reduced her housing costs by providing household services in exchange for rent. Marilyn never shared joint bank accounts, leases, utility bills, or other financial obligations with Frost. She continues to pay her own

3

credit card bills, automobile expenses, cell phone, and personal expenses. Robert offered no evidence of joint financial accounts, joint debts, or commingled finances between Marilyn and Frost.

November 3, 2025 Judgment Entry, p. 2-3.

{¶ 6} The trial court found no cohabitation by Ward and Frost within the meaning of the divorce decree. It noted that Ward primarily resided in one room of Frost's two-bedroom, 750 square foot trailer. The trial court credited her claim that she and Frost were friends and roommates and that she "initially paid rent, and later exchanged household services such as gardening and cleaning for reduced housing expenses." The trial court observed that "[s]he pays her own car insurance, credit cards, and phone bills, and there was no evidence of joint accounts, shared debts, or financial pooling." The trial court determined that Frost had not undertaken a duty to support Ward. It reasoned that "the absence of [a] financial assumption/marital type relationship prevents a finding of cohabitation for the purposes of spousal support termination." *Id*. at p. 4.

{¶ 7} Finally, the trial court rejected Grounds' alternative request for a spousal support reduction in recognition of the financial benefit Ward received by living with Frost. While acknowledging that it retained jurisdiction to modify spousal support, the trial court found continued support of $2,400 per month to be equitable. It cited the parties' greatly disparate incomes, the duration of their marriage, Ward's age, her limited earning capacity and history, and her health. The trial court believed that her standard of living and ability to meet future needs would decline drastically without her current support. Grounds timely appealed, advancing three assignments of error.

4

## II. Analysis

**{¶ 8}** The first assignment of error states:

**The Trial Court erred in refusing to admit evidence of cohabitation and dismissing Appellant's witness, *sua sponte.***

**{¶ 9}** Grounds anticipated calling a Florida private investigator to testify remotely during the hearing on his motion. He contends the trial court erred in sua sponte dismissing the witness as unnecessary. He also claims the trial court erred in refusing to consider the investigator's report, video evidence, and evidence establishing ownership of the Florida residence shared by Ward and Frost.

**{¶ 10}** We ordinarily review a trial court's evidentiary rulings for abuse of discretion. The phrase "abuse of discretion" implies that a court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). Most abuses of discretion involve decisions that are unreasonable rather than unconscionable or arbitrary. *K.S. v. J.C.*, 2026-Ohio-1395, ¶ 9 (2d Dist.), citing *State v. Malloy*, 2012-Ohio-2664, ¶ 24 (2d Dist.). Here, however, Grounds did not object when the trial court found the private investigator's testimony unnecessary and dismissed the witness. Therefore, plain-error review applies to that aspect of its decision. "In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error . . . seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus.

**{¶ 11}** Having reviewed the record, we find no error, plain or otherwise, in the trial court's challenged rulings. At the outset of the hearing, the trial court told Ward that Grounds had a private investigator who was prepared to testify to her living with Frost. She agreed to

stipulate to that fact. The trial court responded by sua sponte finding the investigator's testimony unnecessary and excusing him. Grounds then testified in support of his motion. Early in his testimony, the trial court questioned the need for his exhibits A through F. It engaged in the following exchange with the parties:

THE COURT: So I'm gonna say A through H—or A through F are not necessary, right? Because that's the investigation, the deeds on the house, auditor information, voter information, videos. I mean, she's agreed she's living with him.

[GROUNDS' COUNSEL]: Sure. I think the—in terms of the—some of that I think still goes towards whether or not, you know, who owns the house specifically and whether or not there's a—I think it's—but some of that is still relevant. I would—

THE COURT: Rights. Okay. Well, I think we can stipulate to the fact— I'm gonna—just based on what she said, Marilyn, you—you're gonna stipulate to the fact that John Frost owns the house that you live in and you have no legal right to it, right?

MS. WARD: That's correct.

THE COURT: Okay. So that takes care of that. Are you also going to stipulate to the fact that you don't pay him rent, correct?

MS. WARD: I don't pay him rent, no.

THE COURT: Correct. So you don't pay taxes, insurance, utilities or rent?

MS. WARD: That's correct.

THE COURT: Okay. Thank you.

6

{¶ 12} Following this exchange, Grounds testified without relying on exhibits A through F. At one point, however, he did reference the private investigator's report. He testified that based on the report, he believed Ward and Frost had been living together since November 2021. During the cross-examination of Ward, the trial court permitted Grounds' counsel to question her about one of the exhibits at issue, namely exhibit C, which was a copy of property tax records for Frost's Florida residence.

{¶ 13} Regarding the private investigator's participation in the hearing, the better practice would have been for Ward to seek his exclusion if she deemed his testimony unnecessary. Nevertheless, Grounds has not established any prejudice due to the trial court's ruling excusing the private investigator from testifying. Grounds claims the investigator's testimony would have "touched on numerous aspects of cohabitation" beyond Ward and Frost living together. After Ward admitted residing with Frost, however, the only remaining relevance to the investigator's testimony cited by Grounds' attorney concerned ownership of the Florida residence. Notably, Ward then stipulated that Frost owned the property. She also admitted during the second day of the hearing that she had used Frost's address as early as 2021.

{¶ 14} On appeal, Grounds characterizes the investigator's report and video surveillance as supporting his claim of a romantic relationship between Ward and Frost. But we see nothing in the exhibits contradicting Ward's testimony that she and Frost were friends who shared a residence. Exhibit A, the private investigator's report, contained surveillance pictures taken outside of Frost's residence as well information pertaining to addresses, vehicles, driver's licenses, liens, and voter registration of Ward and/or Frost. Exhibit B was a copy of the deed for Frost's Florida residence. Exhibit C, about which the trial court allowed Ward to testify, was a tax record regarding Frost's residence. Exhibits D and E were voter

7

registrations identifying the Florida residence as the address of Frost and Ward. Finally, exhibit H was video footage obtained by the investigator. The video itself was not admitted into evidence, and Grounds did not proffer what it depicted.

{¶ 15} Based on our examination of the record, we see no basis for the private investigator to have provided relevant testimony addressing anything beyond what Ward stipulated. Therefore, the trial court did err in finding the investigator's testimony unnecessary. Nor did it abuse its discretion in excluding the referenced exhibits. Accordingly, the first assignment of error is overruled.

{¶ 16} The second assignment of error states:

**The Trial Court erred by finding that Appellee was not cohabitating with her paramour and denying Appellant's Motion to Terminate Spousal Support.**

{¶ 17} Grounds challenges the trial court's finding of no cohabitation between Ward and Frost for purposes of terminating spousal support. He cites evidence that Ward and Frost lived together as early as 2021 and remained so at the time of the hearing. Grounds also claims Frost voluntarily undertook a duty of total support for Ward. He stresses that she lived in Frost's home without paying rent or bills for water, gas, electricity, internet, or trash collection. He contends the present case is like *Clark v. Clark*, 2006-Ohio-4820 (11th Dist.), which involved a finding of cohabitation by an ex-wife where her new partner provided her with a rent-free residence.

{¶ 18} "[C]ohabitation is established, and a spousal support obligation is subject to termination, when a paramour voluntarily undertakes a duty of total support or otherwise assumes obligations equivalent to those arising from a ceremonial marriage." *Raska v. Raska*, 2018-Ohio-3921, ¶ 10 (2d Dist.), citing *Perri v. Perri*, 79 Ohio App.3d 845, 851-852

8

(2d Dist. 1992). A cohabitation provision in a divorce decree is intended "'to prevent a person from receiving support from two sources, each of whom is obligated or voluntarily undertakes the duty of total support.'" *Perri* at 850, quoting *Taylor v. Taylor*, 11 Ohio App.3d 279, 280 (1st Dist. 1983). "Cohabitation is a question of fact for the trier of facts." *Raska* at ¶ 10.

{¶ 19} Grounds claims that the trial court's finding of no cohabitation between Ward and Frost is against the manifest weight of the evidence. This standard "requires us to weigh the evidence and all reasonable inferences, to consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice." *Carr v. Carr*, 2021-Ohio-2530, ¶ 9 (2d Dist.).

{¶ 20} Having reviewed the record, we conclude that the weight of the evidence supports the trial court's finding of no cohabitation. Ward testified that she initially lived with her sister upon moving to Florida. After a job transfer, she looked for a place to rent but ended up moving into Frost's residence, a small two-bedroom trailer. Ward stated that she initially paid Frost $1,100 per month for five months. She apparently then moved out for some time before returning. Upon her return, she stopped paying rent. She instead agreed to do all the cooking and cleaning and to do yard work including gardening, weeding, and helping to clear trees from the property. Ward testified that she pays for her phone bill and for her share of the food. She also makes her own vehicle payments and pays for her own credit card. Ward explained that she was trying to reach a point financially where she could "be on [her] own." The plan was for her eventually to live in her recreational vehicle on Frost's property. The trial court found Ward to be credible and relied on much of her testimony.

{¶ 21} Although Ward did not directly pay for rent or utilities, she essentially bartered for a place to live. Therefore, Frost did not undertake a duty of support by allowing her to live rent-free without any contribution. She could be characterized as akin to a live-in maid

9

who exchanged work for lodging. The trial court found no evidence that Ward and Frost ever shared accounts or comingled finances. It noted too that she paid her own personal expenses while working for Frost. Considering this evidence, the trial court reasonably found that Grounds had failed to establish Ward's cohabitation with an unrelated adult for purposes of terminating spousal support.

{¶ 22} In reaching this conclusion, we find Grounds' reliance on the Eleventh District's opinion in *Clark* to be misplaced. The ex-wife in *Clark* lived in a home that her new fiancé had built and furnished. After the ex-wife's divorce became final, her new fiancé transferred his home into their joint names and purchased the ex-wife a car. They shared a joint checking account that they used to pay some expenses. The Eleventh District found that the ex-wife and her new fiancé were virtually married. "Given the reality of the living arrangement," the appellate court held that the former husband was entitled to have his spousal support obligation terminated due to cohabitation.

{¶ 23} Unlike the situation in *Clark*, Ward performed substantial work for Frost in exchange for a place to live. She did not co-own Frost's residence, and they did not share accounts or comingle assets. Ward also paid for her own vehicle, and Frost did not buy her one. Based on the record before us, the trial court's resolution of the cohabitation issue is not against the manifest weight of the evidence. The second assignment of error is overruled.

{¶ 24} The third assignment of error states:

**The Trial Court erred by failing to recalculate spousal support based upon the support Appellee receives from her live in paramour.**

10

**{¶ 25}** Even if cohabitation did not exist, Grounds contends the trial court should have reduced his spousal support obligation in recognition of the financial benefit Ward received by living with Frost.

**{¶ 26}** Under R.C. 3105.18(E), the trial court retained jurisdiction to modify the amount of spousal support because the divorce decree gave it that power. Under R.C. 3105.18(F), the trial court could have exercised that authority upon finding a substantial change in Ward's circumstances that was unaccounted for at the time of the divorce decree and that made the existing award no longer reasonable and appropriate. Grounds claims that the reduction in Ward's living expenses after moving in with Frost met this standard and warranted a reduction in his spousal support obligation.

**{¶ 27}** "Even when the evidence does not establish a finding of cohabitation, a trial court may consider whether the relationship between the spousal support obligee and the paramour resulted in a change of circumstances sufficient to entitle the spousal support obligor to some relief." *Carr*, 2021-Ohio-2530, at ¶ 27 (2d Dist.). "We review a trial court's decision regarding modification of spousal support for an abuse of discretion." *Id*. at ¶ 29.

**{¶ 28}** In declining to modify Grounds' obligation, the trial court cited several relevant considerations under R.C. 3105.18(C)(1), including "income disparity, duration of marriage, age, health, earning capacity, and standard of living." It reasoned:

> Robert earns approximately $155,000 annually compared to Marilyn's $13,200. The parties' marriage lasted more than twenty years. Marilyn is older, has limited historical and current earning ability, and ongoing health challenges. Her standard of living and ability to prepare for future financial needs without support would decline drastically. Balancing these

11

considerations, the Court concludes that Marilyn continues to require support, and the amount of support of $2,400 per month is equitable.

November 3, 2025 Judgment Entry, p. 4.

{¶ 29} Although residing with Frost may have reduced Ward's expenses below what the parties anticipated when they divorced, her current income also is substantially lower. Shortly after the divorce decree, Ward filed an affidavit of financial disclosure listing her 2022 income as $29,000. At that time, she was working for a healthcare company. At the time of the cohabitation hearing, Ward was unemployed and was receiving social security benefits of $13,200 annually, whereas Grounds had an annual income of $155,000. Even if Ward benefited financially by living with Frost, the savings were offset by her vastly reduced income. Under these circumstances and considering the other factors cited by the trial court, we see no abuse of discretion in its decision to keep Grounds' spousal support obligation at $2,400 per month. The third assignment of error is overruled.

### III. Conclusion

{¶ 30} The judgment of the Greene County Common Pleas Court, Domestic Relations Division, is affirmed.

. . . . . . . . . . . . .

LEWIS, P.J., and HANSEMAN, J., concur.

12